IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CALEB BASSETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:21-cv-152 |
| | ) | Judge Katherine A. Crytzer |
| HERBERT SLATERY, et al., | ) | Magistrate Judge Debra C. Poplin |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants Herbert Slatery, Tennessee Attorney General and Reporter, and Jeff Long, Commissioner of the Tennessee Department of Safety and Homeland Security, hereby move to dismiss Plaintiffs Caleb Bassett, Blake Beeler, Logan Ogle, and Firearms Policy Coalition, Inc.'s complaint, (D.E. 1), because it fails to state a claim upon which relief can be granted. Fed. R. Civ Pro. 12(b)(6).

Across years and judicial circuits, Courts routinely hold that age-based restrictions on gun possession are presumptively constitutional because they fall outside of the scope of activity that the Second Amendment was designed to protect. As recently as April of this year, in *Lara v. Evanchick*, Case No. 2:20-cv-1582, 2021 WL 1432802, at * 2 (W.D. Penn. 2021), a federal court examined a challenge to a statutory scheme remarkably similar to Tennessee's brought by one of the plaintiffs in this case—Firearm Policy Coalition—and found that it was presumptively constitutional because firearm restrictions applying to individuals younger than 21 did not implicate the Second Amendment.

The Court should reach the same conclusion here. However, even if the age-based restrictions did implicate the Second Amendment, intermediate scrutiny would apply to the

question of whether the limited restrictions are reasonably related to a significant, substantial, or important objective. Tennessee's age-based restrictions are constitutional under intermediate scrutiny due to the reasonable fit between Tennessee's interests in public safety and crime reduction and indisputable statistical evidence showing the disproportionate rate at which 18-to-20-year-olds commit violent crimes and are armed during the commission of such a crime.

Therefore, Plaintiff's complaint should be dismissed with prejudice.

## BACKGROUND

### I. Plaintiffs Allege that Tennessee's Handgun Laws Unconstitutionally Abridge the Second Amendment Rights of 18-to-20-Year-Olds

The gravamen of Plaintiffs' complaint is that Tennessee's combined laws regulating handguns, rather than one law in particular, "erect[] an absolute barrier to the exercise of [Second Amendment rights] for Plaintiffs . . . and all similarly situated 18-to-20-year-old citizens . . . ." (*Id.* at ¶ 19.) Plaintiffs Bassett, Beeler, and Ogle are individuals over the age of 18 but under the age of 21 who each wish to carry a handgun in public. (D.E. 1, ¶¶ 22-24.) Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a non-profit organization interested in defending and promoting individuals' right to bear arms, with a membership comprised of the individual Plaintiffs and other gun advocates. (*Id.* at ¶ 25.)

Plaintiffs invoke the jurisdiction of 42 U.S.C. § 1983 to bring this Second Amendment challenge alleging that three Tennessee laws, when taken together—Tenn. Code Ann. §§ 39-17-1307(a), 39-17-1351(b)-(c), and 39-17-1366(b)(3)—create a statutory scheme that unconstitutionally abridges the right of 18-to-20-year-olds to bear arms. (*See id.* at ¶¶ 8, 14 (alleging laws prohibit 18-to-20-year-olds from exercising right to bear arms); ¶¶ 96-106 (alleging interplay of Tennessee laws, rather than one law in particular, is unconstitutional).) Plaintiffs bring a Fourteenth Amendment claim solely for the purpose of applying the Second Amendment to the

State of Tennessee. (*Id.* at ¶ 97 ("The Second Amendment . . . constitutional guarantee is incorporated against the States through the Fourteenth Amendment.").) Plaintiffs name General Slatery and Commissioner Long as defendants because they are allegedly both responsible for "overseeing, implementing, and enforcing the State's criminal laws" and implementing and administering regulatory programs, including the gun laws and gun permitting. (*Id.* at ¶¶ 26-28.)

## II. Tennessee's Permitting Laws

At the time Plaintiffs filed their complaint, the Governor "had signed into law Senate Bill 765 under Tennessee Public Chapter No. 108," which became effective on July 1, 2021, (*Id.* ¶¶ 10-11), and amended Tenn. Code Ann. § 39-17-1307 ("Permitless Carry Amendment"). The Amendment allows individuals who fall into certain categories, including those older than 20, to carry a handgun openly or concealed without a permit of any kind. *See* Tenn. Code Ann. § 39-17-1307(g).

Prior to the Amendment, Tennessee had—and still has—two types of permits: (1) an enhanced carry permit, Tenn. Code Ann. § 39-17-1351; and (2) a concealed carry permit, Tenn. Code Ann. § 39-17-1366. The permitting regime still exists because Tennessee citizens who travel out of the State still benefit from obtaining Tennessee permits. When a Tennessee resident wishes to carry a handgun outside of Tennessee and across state lines, another state may extend the rights and privileges to carry a handgun based on the Tennessee permit.[1] However, the Permitless Carry Amendment effectively eliminated the need for qualifying individuals to obtain a permit to carry a handgun within Tennessee.

## III. Tennessee's Handgun Restrictions and the Exceptions

---

[1] For example, Georgia's handgun laws provide that if a person is licensed to carry a weapon in another state, that person is allowed to carry the weapon in Georgia pursuant to the home-state license, assuming the home state extends the same comity to Georgia residents. *See* Ga. Code Ann. § 16-11-126(e).

Tennessee's statutory scheme for regulating the possession and carry of handguns implicate additional laws to those Plaintiffs identify; therefore, to provide a fulsome picture, it is necessary to explain not only the laws Plaintiffs cite but also the related statutory provisions. The complete picture demonstrates that there are several instances in which 18-to-20-year-olds may possess a handgun. The following summarizes the relevant statutory provisions.

- **General Restriction:**
    - Tenn. Code Ann. § 39-17-1307(a) – "A person commits an offense who carries, with the intent to go armed, a firearm . . . ."

- **Limited Restriction Regarding 18-to-20-Year-Olds:**
    - Tenn. Code Ann. § 39-17-1307(g) – "It is an exception to the application of [the general firearm restriction] that a person is carrying, whether openly or concealed, a handgun and:"
        - The person is 21 years old, or
        - The person is 18 years old and a veteran or active-duty member of the armed forces.

    - Tenn. Code Ann. § 39-17-1351(b) – Enhanced handgun carry permit available to any resident of Tennessee who is
        - 21 years old, or
        - 18 years old and a veteran or active-duty member of the armed forces.

    - Tenn. Code Ann. § 39-17-1366(b)(3)[2] – Concealed handgun carry permit available to any resident of Tennessee who is
        - 21 years old, or
        - 18 years old and a veteran or active-duty member of the armed forces.

- **Broad Exceptions:**[3]

    - Tenn. Code Ann. § 39-17-1307(e)(1) – Lawful for a person to possess or carry a firearm in their car or boat.

    - Tenn. Code Ann. § 39-17-1308 – Lawful for a person to possess or carry a firearm
        - At their home, residence, or premises;

---

[2] Tennessee Code Annotated § 39-17-1366(b)(3) specifically incorporates Tenn. Code Ann. § 39-17-1351(b) as a prerequisite for permitting, which imposes the age limitations.

[3] The examples below do not represent an exhaustive list.

- For hunting, trapping, fishing, camping, sport shooting, or other lawful activity;
- While engaged in the protection of livestock from predators; or
- If that person is protected by an order of protection, such as the victim of domestic abuse.

- <u>Tenn. Code Ann. § 39-17-1315</u> – Lawful for a person to possess or carry a firearm if that person is a law enforcement officer.

- <u>Tenn. Code Ann. § 39-17-1322</u> – Lawful for a person to possess, carry, or employ a firearm
  - In self-defense;
  - In defense of others;
  - In defense of property; or
  - To prevent a criminal offense from occurring.

In sum, Tennessee's statutory scheme operates to bar 18-to-20-year-olds from permitless carry of handguns and from obtaining a permit if they are not past or present members of the military. The statutes above, however, demonstrate several carveouts that allow 18-to-20-year-olds to possess and use firearms.

**LEGAL STANDARDS**

When considering a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must raise more than a "possibility that a defendant has acted unlawfully"; there must be sufficient factual allegations to render the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wesley*, 779 F.3d

at 429. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

In deciding a motion to dismiss, a court "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *holding modified on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010); *Green v. U.S. Dep't of Just.*, 392 F. Supp. 3d 68, 99 n.8 (D.D.C. 2019) ("[A] Court may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty." (quoting *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012))). And "[t]he Court can take notice of government statistics." *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 263 n.3 (E.D.N.Y. 2008); *see also* Fed. R. Evid. 201; *United States v. Esquivel*, 88 F.3d 722, 726-27 (9th Cir.1996) (taking judicial notice of census data compiled by the United States Department of Commerce).

In the context of a motion to dismiss a claim brought under 42 U.S.C. § 1983, "the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722.

## ARGUMENT

Age-based restrictions on gun possession are presumptively constitutional because they fall outside of the scope of activity that the Second Amendment was designed to protect. This alone is dispositive. Courts have ended the inquiry here. If this Court proceeds further, intermediate scrutiny applies. The age-based restrictions survive because of the because of the reasonable fit between Tennessee's interests in public safety and crime reduction and indisputable

statistical evidence showing the disproportionate rate at which 18-to-20-year-olds commit armed, violent crimes.

I.  **The Framework for Deciding a Second Amendment Challenge**

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court concluded that, while the Second Amendment confers an individual right to keep and bear arms, the right is not absolute. Following *Heller*, courts evaluating the boundaries of Second Amendment rights employ the same widely accepted two-part inquiry:

> First, the government must show "that the challenged statute regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment . . . ." If the government satisfies its initial burden, "then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review."
>
> If the government offers "historical evidence [that] is inconclusive or suggests that the regulated activity is *not* categorically unprotected," however, then we must inquire "into the strength of the government's justification for rejecting or regulating the exercise of Second Amendment rights." Under this second prong, we determine and apply the appropriate level of heightened means-end scrutiny, given that the Supreme Court has rejected rational-basis review in this context.

*Stimmel v. Sessions*, 879 F.3d 198, 204 (6th Cir. 2018) (emphasis in original) (citations omitted).

Plaintiffs' lawsuit and the present motion ask the Court to apply this two-part test to Tennessee's age-based restrictions on gun possession and ownership. That is not a novel exercise. Nor will the exercise result in a novel conclusion. Far from it —"[a]n examination of federal caselaw following *Heller* shows a broad consensus that restrictions on firearm ownership, possession and use for people younger than 21 fall within the types of 'longstanding' and 'presumptively lawful' regulations envisioned by *Heller* and, thus, fall outside the scope of the Second Amendment." *Lara*, 2021 WL 1432802, at * 2.

**II.     Tennessee's Age-Based Restrictions Fall Outside the Scope of the Second Amendment and Are, Thus, Presumptively Constitutional.**

The first part of the two-part inquiry asks whether the restrictions at issue fall outside the scope of the Second Amendment. *Stimmel,* 879 F.3d at 204. If the answer is yes, "the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* Here, the answer is yes.

As mentioned, this year, in *Lara v. Evanchick*, a federal court upheld Pennsylvania's age-based restrictions, which strongly resemble Tennessee's, in a challenge also brought by FPC. 2021 WL 1432802. The *Lara* decision provides the correct framework for assessing Tennessee's age-based restrictions. In *Lara*, the court decided at the motion to dismiss stage of the proceedings that the age-based restrictions at issue fell outside of the scope of the Second Amendment, ended its inquiry there, and dismissed Plaintiff FPC's complaint. The Pennsylvania laws at issue in *Lara* are comparable to Tennessee's laws at issue here:

> The Pennsylvania Uniform Firearms Act of 1995, 18 Pa. C.S. §§ 6101-6128, makes it unlawful to carry a concealed firearm without a license unless the individual falls within one of the statutorily enumerated exceptions. 18 Pa. C.S. § 6106(b). Section 6109 of the Act provides that licenses may only be issued to individuals who are at least 21 years old. 18 Pa. C.S. § 6109(b). Generally, Pennsylvanians without a license to carry concealed are free to carry openly (that is, in an unconcealed manner).

2021 WL 1432802, at * 1.

After a review of precedent concerning age-based restriction challenges, the *Lara* Court turned to the specific laws at issue. The court found that the plaintiffs had misrepresented the scope of Pennsylvania's age-based restrictions: "[w]hile Plaintiffs suggest a near total deprivation of the right of 18-to-20-year-olds to keep and bear arms, a review of the statutory provisions dispels this characterization." *Id.* at *5. The court found that Pennsylvania's law "specifically permits the use of firearms" in a wide number of circumstances including "for recreational purposes, such

as target shooting, hunting, furbearing or fishing," for use by qualified individuals such as police officers, and for defense of person and property. *Id.* at *7-8. The Court therefore concluded the threshold question—the first part of the two-part analysis—was "whether the *relatively* (compared to the other [post-*Heller* cases]) *limited restrictions* imposed by the interplay of [Pennsylvania law] facially implicate the Second Amendment." *Id.* at *7 (emphasis added).

This case mirrors *Lara*. Plaintiffs allege "Tennessee law erects an absolute barrier to the exercise of [Second Amendment rights] . . . for Plaintiffs and all similarly situated 18-to-20-year-old citizens," (D.E. 1, ¶ 9.), but the restrictions in Tennessee are subject to similar exceptions to those identified in *Lara*. Likewise, the "restrictions imposed . . . are much narrower than characterized by Plaintiffs." *Lara*, 2021 WL 1432802, at *12. In this state, regardless of age, an individual may carry or possess a firearm, *inter alia*, **(1)** in their car, Tenn. Code Ann. § 39-17-1307(e)(1); **(2)** in their boat, *Id.*; **(3)** at their home, residence, or premises, *Id.* at 1308(a)(3); **(4)** for hunting, trapping, fishing, camping, sport shooting, or other lawful activity, *Id.* at (a)(4); **(5)** while engaged in the protection of livestock from predators, *Id.* at (a)(5); **(6)** if that person is protected by an order of protection, such as the victim of domestic abuse, *Id.* at (a)(11); **(7)** if that person is a law enforcement officer, *Id.* at (a)(2); **(8)** in self-defense, *Id.* at 39-17-1322; **(9)** in defense of others, *Id.*; **(10)** in defense of property, *Id.*; or **(11)** to prevent a criminal offense from occurring, *Id.*

These exceptions demonstrate that all 18-to-20-year-olds in Tennessee "are not precluded from the 'right to bear arms in public in any manner' as the argue;" instead, "[t]he limitations only apply to public streets and public property." *Lara*, 2021 WL 1432802, at * 12. Furthermore, Plaintiffs "are permitted to keep and bear arms for a wide array of purposes, including the defense of their persons and property, hunting, target shooting, and a variety of occupation-based

purposes." *Id.* Accordingly, the question before this Court is whether Tennessee's *relatively limited restrictions* facially implicate the Second Amendment.

The *Lara* Court found such limited restrictions do not implicate the Second Amendment, so should this Court. In *Lara*, after comparing post-*Heller* case law to Pennsylvania's handgun laws regulating 18-to-20-year-olds, the court concluded as follows:

> In light of the consensus amongst federal courts that age-based restrictions—including restrictions more severe than imposed by the Pennsylvania statutes at issue—fall under the class of "longstanding" and "presumptively lawful" regulations recognized in *Heller*, the Court is compelled to find that the age-based restrictions at issue here fall outside of the scope of the Second Amendment.

*Id.* at *13. Because the court held that the regulations did not implicate the Second Amendment under the first part of the two-part test, "it [was] unnecessary for the Court to proceed to an examination of the restrictions under intermediate scrutiny." *Id.* at *13 n.8. The *Lara* plaintiffs' claims were dismissed without leave to amend. *Id.* at *13.

So too here, there is no reason for this Court to depart from well-established federal precedent that relatively limited age-based restrictions regulating the rights of 18-to-20-year-olds to possess and carry handguns fall outside the scope of the Second Amendment and are, thus, constitutional. The *Lara* decision is the most recent in an *expansive* body of precedent holding that age-based restrictions fall outside the scope of the Second Amendment and are presumptively constitutional.

For example, the Fifth Circuit, in *National Rifle Association of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives* ("*BAFTE*"), 700 F.3d 185 (5th Cir. 2012), upheld a federal statute and regulations that prohibited firearms dealers from selling handguns to persons under the age of 21. Applying the two-part framework, the Fifth Circuit concluded that a ban on selling handguns to adults under 21 years old fell into the category of longstanding and

presumptively valid regulatory measures that *Heller* excepted from the Scope of Second Amendment protection. *Id.* at 203-4.

A year after *BAFTE*, the Fifth Circuit upheld a Texas law barring 18-to-20-year-olds from carrying handguns in public (either openly or concealed). *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013). The challengers argued that the licensing law at issue violated their rights under the Second Amendment because it completely divested them—legal adults—of the right to carry a handgun. *Id.* at 343. As in *BAFTE*, the Court held that age-based restrictions were "longstanding" and "presumptively lawful regulatory measures" that likely fell outside the scope of the Second Amendment. *Id.* at 346-47 (quoting *Heller*, 554 U.S. at 626, 627 n.26).

In *Powell v. Thompkins*, 926 F. Supp. 2d 367 (D. Mass. 2013), a federal district court reached the same result as the Fifth Circuit in *BAFTE* and *McCraw*. At issue was a Massachusetts law precluding anyone from possessing a gun without a firearm identification card, and from carrying a gun (in any manner) without a license. *Id*. at 370. Similar to the statutory scheme in Tennessee, those under 21 could not obtain either a firearm identification card or a license. *Id.* The law, in effect, generally banned those under 21 from owning and carrying guns. The court explained that *Heller* does not support an unlimited reading of the Second Amendment and that the Supreme Court had "exhibited a rather favorable posture toward licensure, especially when the practice is used to moderate law and order." *Id.* at 379. Thus, the court held that the "proscription against grants of licenses to carry firearms to adults under the age of twenty-one comports with the Second Amendment and imposes no burden on the rights of eighteen- to twenty-year-olds to keep and bear arms." *Id.* at 387.

Last year, in *Mitchell v. Atkins*, 483 F. Supp. 3d 985 (W.D. Wash. 2020), a court rejected a claim that a state law prohibiting the purchase of a semiautomatic rifle to people under 21 years old violated the rights of 18-to-20-year-olds. The court's review of post-*Heller* "authorities demonstrate[d] that reasonable age restrictions on the sale, possession, or use of firearms have an established history in this country." *Id.* at 993. In holding that the Washington restrictions at issue were examples of long-established and presumptively lawful regulatory measures, the court acknowledged that "U.S. law has long recognized that age can be decisive in determining rights and obligations. For most of our country's history, 18-to-20-year-olds were considered minors or 'infants' without the full rights of adulthood." *Id.* at 992-94.

Even more recently, a federal district court upheld a California law that the challengers characterized as prohibiting 18-to-20-year-olds from purchasing, using, transferring, possessing, or controlling any firearm. *Jones v. Becerra*, 498 F. Supp. 3d 1317, 1321-23 (S.D. Cal. 2020), *appeal docketed*, No. 20-56174 (5th Cir. Nov. 9, 2020). The court reviewed the Fifth Circuit's decision in *BAFTE* and other post-*Heller* cases and held that "age-based restrictions like the one in [the statute at issue] are longstanding and presumptively [c]onstitutional." *Id.* at 1326-27.

This brings the discussion into the present and to Tennessee's statutory scheme. The extensive authority above is sufficient guidance from which the Court can conclude that Tennessee's age-based restrictions are part of a longstanding tradition and thus fall outside the rights guaranteed by the Second Amendment. It appears to be settled in stone that age-based restrictions like those at issue here fall outside the scope of the Second Amendment and are presumptively constitutional. Here should end the inquiry. Plaintiffs' complaint should be dismissed.

**III.     Tennessee's Age-Based Restrictions Survive Constitutional Scrutiny.**

Once a state demonstrates that its laws do not infringe on Second Amendment rights, it is an unnecessary "belt-and-suspenders" approach for a court to proceed to the governmental-justification part of the two-part test:

> Because the Court holds that the regulations at issue are the type of 'longstanding' and 'presumptively valid' restrictions that do not implicate the Second Amendment under the first prong of the [two-part] analysis, it is unnecessary for the Court to proceed to an examination of the restrictions under intermediate scrutiny. While respecting that some courts, having found the first prong was satisfied, will nevertheless undertake a belt-and-suspenders approach and analyze the second prong, this Court declines to do so. The [two-part] test is sufficiently well established that the Court does not believe there is any question that its disposition under the first prong is, along, sufficient to decide all of the issues at bar. Thus, proceeding to the second prong for an "even-if" analysis would be an exercise in dicta.

*Lara*, 2021 WL 1432802 at *13, note 8.

If, however, the Court chooses to analyze whether there is sufficient justification for the age-based restrictions, it should apply intermediate scrutiny. Because "the 'risk inherent in firearms' distinguishes the right to keep and bear arms 'from other fundamental rights that have been evaluated under a strict scrutiny test,'" the Sixth Circuit typically applies intermediate scrutiny to Second Amendment challenges. *Stimmel*, 879 F. 3d at 207 (quoting *Tyler v. Hillsdale County Sheriff's Department,* 837 F.3d 678, 691 (6th Cir. 2015)). Before choosing to apply intermediate scrutiny, a court should consider "(1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the burden on the right." *Id*. at 206.

Tennessee's age-based restrictions do not approach the core of the Second Amendment right or impose any great burden on that right. "'[T]he Second Amendment, at its core, protects "law-abiding, *responsible*" citizens,' and Congress had determined that persons under 21 tend to be irresponsible and emotionally immature, and can be thrill-bent and prone to criminal behavior." *McCraw*, 719 F.3d at 347-48 (emphasis in original) (quoting *BAFTE*, 700 F.3d at 206).

13

Tennessee's age-based restrictions on individuals under the age of 21, accordingly, do not approach the core of the Second Amendment right. *Id.* at 348 (finding similar age-based handgun restrictions in Texas did not approach the core of the Second Amendment Right).

Age-based restrictions do not impose a great burden on the Second Amendment right if they (1) do not completely ban handgun possession and use, (2) allow persons aged 18 to 20 to possess and use handguns "in defense of hearth and home" and (3) are temporary, expiring when a person turns 21. *Id.* at 348. Tennessee's age-based restrictions (1) do not completely ban handgun possession and use, (2) permit use of firearms for self-defense and defense of property, and (3) end as soon as a person turns 21. Tenn. Code Ann. §§ 39-17-1307(g), 39-17-1308, 39-17-1322. Because Tennessee's statutory scheme does not go to the core of the Second Amendment protections or burden them, if this Court elects to conduct a step-two analysis, it should apply intermediate scrutiny.

To survive intermediate scrutiny, "the government must state a 'significant, substantial, or important objective' and establish a 'reasonable fit' between the challenged restriction and that objective." *Id.* (quoting *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016)). The "'reasonable fit' does 'not need to be a *perfect* one[;] the government need not prove that there is no burden whatsoever' on [a plaintiff's] Second Amendment right." *Id.* (emphasis in original) (quoting *Tyler*, 837 F.3d at 693). A regulation "is reasonable if it 'represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Id.* (quoting *Tyler*, 837 F.3d at 693). In order meet the burden of intermediate scrutiny, "[t]he government may 'rely on a wide range of sources, including legislative history, empirical evidence, case law, and even common sense.'"[4] *Id.* at 207-08 (quoting *Tyler*, 837 F.3d at 694).

---

[4] As discussed in the Legal Standards section, the Court may consider such evidence at the motion

Tennessee's age-based restrictions on firearm possession further the objectives of public safety and crime prevention.  *See* Tenn. Code Ann. § 39-17-1351(a).  These objectives qualify as "legitimate and compelling" for the purpose of the intermediate scrutiny analysis.  *McCraw*, 719 F.3d at 348 (quoting *BATF*, 700 F.3d at 209); *see also, e.g.*, *Woollard v. Gallagher*, 712 F.3d 865, 878 (4th Cir. 2013) ("Maryland's interests in protecting public safety and preventing crime satisfy the 'significant governmental interest' aspect of the intermediate scrutiny standard."); *Mishtaku v. Espada*, 669 F. App'x 35, 36 (2d Cir. 2016) ("New York has substantial, indeed compelling, governmental interests in public safety and crime prevention." (quoting *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012))).

Tennessee's statutory scheme is proportional to and reasonably fits the state's important objectives because of the danger posed by armed 18-to-20-year-olds.  "According to a study by the U.S. Departments of Justice and Treasury, the age at which persons most often commit homicide is 18, with those ages 19 to 20 accounting for 22 percent of homicide arrests.  Firearms are used in 86 percent of all homicides . . . ."  David Sheppard, et al., *Fighting Juvenile Gun Violence*, U.S. Dept. of Justice Juvenile Justice Bulletin, at 1 (Sept. 2000), available at https://www.ojp.gov/pdffiles1/ojjdp/182679.pdf (attached as Exhibit A).  A statistical survey of inmates in state and federal correctional facilities published by the U.S. Department of Justice's Bureau of Justice Statistics also showed that 35.5% of state prison inmates 20 or younger, and 23% of federal inmates in the same age group, possessed a firearm during their convicting offense. Caroline Wolf Harlow, Ph.D., *Firearm Use by Offenders*, U.S. Dept. of Justice Bureau of Justice Statistics Special Report, at 4 (Feb. 2002), available at https://bjs.ojp.gov/content/pub/pdf/fuo.pdf

---

to dismiss stage.  *See* Fed. R. Evid. 201; *New England Health Care Emps. Pension Fund*, 336 F.3d 495; *Green*, 392 F. Supp. 3d 68, 99 n.8; *Victoria Cruises, Inc.*, 630 F. Supp. 2d 255, 263 n.3.

(attached as Exhibit B). In both federal and state populations, a greater proportion of inmates 20 or younger possessed a firearm during the convicting offense than in any other age group, including the broad swath of 55 or older. *Id.*

Given the disproportionate rate at which 18-to-20-year-olds have committed violent crimes historically, and the disproportionate rate at which they are armed during the commission of a crime, there is a reasonable fit between Tennessee's interests in public safety and crime reduction and any alleged burden imposed by the statutory scheme that limits the rights of 18-to-20-year-olds to carry and possess handguns in public.

Even under the second part of the Second Amendment test, Tennessee's age-based restrictions are constitutional.

## CONCLUSION

For these reasons, this Court should dismiss Plaintiff's complaint with prejudice.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


s/ Dean S. Atyia
Dean S. Atyia (CA 298615)
Acting Assistant Attorney General
Office of the Attorney General and Reporter
Law Enforcement and Special Prosecutions
P.O. Box 20207
Nashville, Tennessee 37202-0207
Dean.atyia@ag.tn.gov
(615) 741-1982
*Registered and permitted to practice pursuant to Tenn. Sup. Ct. R. 7, Section 10.07 and Admitted to this Court Pro Hac Vice*

s/ Miranda Jones

Miranda Jones<br>
Assistant Attorney General<br>
B.P.R. No. 36070<br>
Miranda.Jones@ag.tn.gov<br>
Law Enforcement and<br>
Special Prosecutions Division<br>
Office of the Attorney General<br>
P.O. Box 20207<br>
Nashville, Tennessee 37202-0207<br>
Phone: (615) 532-1600<br>
Fax: (615) 532-4892<br>
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and served through the electronic filing system on this the 16th day of August 2021, upon the following:

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road
Suite 300
Southport, NC 28461
Phone: 910-713-8804
Fax: 910-672-7705
Email: law.rmd@gmail.com

William Aaron Sack
Firearms Policy Coalition
1215 K Street
17th Floor
Sacramento, CA 95814
Phone: 916-596-3492
Email: wsack@fpclaw.org
*Counsel for Plaintiffs*

s/ Miranda Jones<br>
Miranda Jones<br>
Assistant Attorney General

17
Case 3:21-cv-00152-KAC-DCP   Document 15   Filed 08/16/21   Page 17 of 17   PageID #: 79