IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CALEB BASSETT, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 3:21-cv-152 |
| | ) Judge Katherine A. Crytzer |
| HERBERT SLATERY, et al., | ) Magistrate Judge Debra C. Poplin |
| Defendants. | ) |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants reply in support of their motion to dismiss, which Plaintiffs oppose. (D.E. 14.)

In opposing the motion to dismiss, Plaintiffs rely primarily on *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir. 2021), *as amended* (July 15, 2021), to argue Tennessee's age-based restrictions fall within the scope of the Second Amendment. (D.E. 20, PageID# 120-26, 135, 140.) *Hirschfeld* should not guide this Court for two reasons.

First, the Fourth Circuit vacated *Hirschfeld* as moot, rendering it devoid of precedential value. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, No. 19-2250, 2021 WL 4301564 (4th Cir. Sept. 22, 2021); *see also id.* at *3 (Wynn, J. concurring) ("Once vacated, [a prior opinion] los[es] precedential value within this circuit." (quoting *In re Naranjo*, 768 F.3d 332, 344 n.15 (4th Cir. 2014))).[1]

Second, the *Hirschfeld* opinion's treatment of "longstanding prohibitions" is in tension with Sixth Circuit precedent. According to the Supreme Court, "longstanding prohibitions"

---

[1] *Hirshfeld* was also an outlier and vulnerable to being overturned on a rehearing en banc. *Id.* (Wynn, J. concurring) ("It stands to reason that because the now-vacated panel majority opinion created a circuit split while overturning a fifty-year-old federal law, this matter surely met the requirements of Rule 35 for en banc review.").

concerning firearms can be "presumptively lawful," and these prohibitions include *but are not limited to* restrictions related to felons, the mentally ill, possession in sensitive places, and the commercial sales of firearms. *D.C. v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008).[2] The *Hirschfeld* Court interpreted this provision as "a potential limit" on presumptively constitutional laws—requiring a law to fall in one of the listed categories *and* to be longstanding. 5 F.4th at 418. The Sixth Circuit takes a different approach.

The Sixth Circuit has embraced the Supreme Court's "longstanding prohibitions" analysis as creating a presumption that a longstanding law is facially constitutional but may be found unconstitutional as applied. *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 686 (6th Cir. 2016).[3] The Sixth Circuit has categorically approved prohibitions against felons owning firearms as "longstanding," *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (quoting *Heller*, 554 U.S. at 626-27), even though such prohibitions did not exist "until the early 20th century," *Heller v. D.C.*, 670 F.3d 1244, 1253 (D.C. Cir. 2011). And, when assessing whether a challenged statute regulates activity falling outside the scope of the Second Amendment, the Sixth Circuit has also treated the "longstanding" nature of a statute as a separate, independent question that a court must consider in addition to whether a statute "burdens persons historically understood to be unprotected." *Stimmel v. Sessions*, 879 F.3d 198, 204 (6th Cir. 2018) ("The next question is whether § 922(g)(9), enacted in 1996, is a longstanding prohibition.").

---

[2] Founding-era gun regulations "target[ing] particular groups for public safety reasons" were commonplace. *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 200 (5th Cir. 2012).

[3] Plaintiffs challenge is facial, not as applied, because it is on behalf of themselves and all other "similarly situated" individuals—all individuals subject to the handgun restrictions, essentially all 18-to-20-year-olds in Tennessee. (D.E. 1, PageID# 32-34.)

The Sixth Circuit's approach harmonizes with the analysis of other courts that have held a longstanding prohibition can be presumptively constitutional even if it was not in existence at the time of the Second Amendment's ratification. *See Drake v. Filko*, 724 F.3d 426, 432 (3d Cir. 2013); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012); *Heller v. D.C.*, 670 F.3d at 1253; *United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010).

Age-based prohibitions related to handguns are longstanding. *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d 185, 202 & n.14-16 ("[B]y the end of the 19th century, nineteen States and the District of Columbia had enacted laws expressly . . . restricting the ability of 'minors' to purchase or use particular firearms while the state age of majority was set at age 21."); *People v. Mosley*, 33 N.E.3d 137, 153-55 (Ill. 2015). Indeed, as Plaintiff concedes, (D.E. 20, PageID# 124), Tennessee was among the first states to enact an age-based prohibition for individuals under 21 years old—prohibiting the sale, loan, or gift of a pistol "to any minor" for any purpose other than hunting, *see* 1856 Tenn. Pub. Acts, ch. 81, § 2.[4] Accordingly, the laws at issue in this case are the successors of longstanding age-based prohibitions and entitled to a presumption of constitutionality. *See Tyler*, 837 F.3d at 686; *Carey*, 602 F.3d at 741.

If the Court reaches the issue, Plaintiffs' opposition to the application of intermediate scrutiny lacks merit because it disregards how, even with the temporary[5] handgun restrictions applicable to individuals aged 18 to 20, Tennessee allows the use of handguns for purposes at the "core" of the Second Amendment: self-defense, protection of one's home, and hunting. *See*

---

[4] In 1856, the age of majority in Tennessee was 21 years old. *See, e.g.*, *Parker v. Elder*, 30 Tenn. 546, 546 (1851) ("The plaintiff then was . . . a minor, under the age of twenty-one years . . . .").

[5] A "temporal limitation" in firearm restrictions "has been a key consideration in finding that those regulations pass muster under heightened scrutiny." *Tyler*, 837 F.3d at 697.

*Heller*, 554 U.S. at 629-30; *Heller v. D.C.*, 670 F.3d at 1252. To the extent Plaintiffs doubt the efficacy of Tennessee's self-defense protections, these statutes must be given the benefit of interpretations that will not render them "inoperative or superfluous, void or insignificant." *Gen. Med., P.C. v. Aza*r, 963 F.3d 516, 521 (6th Cir. 2020) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)), *reh'g denied* (July 27, 2020); *Lara v. Evanchick*, No. 2:20-CV-1582, 2021 WL 1432802, at *12 n.7 (W.D. Pa. Apr. 16, 2021). And Plaintiffs "cite[] to no authority showing that courts have applied strict scrutiny" to such Second Amendment challenges. *Turaani v. Sessions*, 316 F. Supp. 3d 998, 1012 (E.D. Mich. 2018).

Plaintiff also takes issue with the statistics supporting the fit between the State's interests and the laws at issue.[6] However, a perfect fit is not required—only a reasonable one, and this fit does not "require a specific method of proof." *Tyler*, 837 F.3d at 694. Rather, it needs "some reference to legislative findings, academic studies, or other empirical data," which Defendants have provided. *Id.* In addition to considering "empirical evidence . . . and even common sense," courts may look to "case law" that supports the reasonable fit. *Id.* There is a surplus of case law with analysis and data supporting the reasonableness of the fit between age-based restrictions on firearms and public safety. *See Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 208–11; *Jones v. Becerra*, 498 F. Supp. 3d 1317, 1330 (S.D. Cal. 2020), *appeal filed*, No. 20-56174 (9th Cir. Nov. 9, 2020); *People v. Fields*, 24 N.E.3d 326, 343-44 (Ill. App. Ct. 2014).

---

[6] Plaintiffs pluck at an arbitrary statistic used in a single case, *Craig v. Boren*, 429 U.S. 190 (1976), to compel the conclusion that age-based restrictions fail to pass muster because less than 2% of 18-to-20 year-olds engage in violent crime. Plaintiffs universalize the single statistic in *Craig* to a threshold that they claim is dispositive, but nothing in *Craig* purported to establish a 2% threshold applicable to all contexts in which Courts may apply intermediate scrutiny. *In re Est. of Miltenberger*, 753 N.W.2d 219, 229 (Mich. 2008) (Kelly, J. concurring) ("The Craig plurality did not find the statistics insufficient merely because 2 percent of men as compared to 0.18 percent of women were arrested for drunk driving.").

4

For these reasons, the motion to dismiss should be granted.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ Dean S. Atyia
Dean S. Atyia (CA 298615)
Acting Assistant Attorney General
Dean.Atyia@ag.tn.gov
*Registered and permitted to practice pursuant to Tenn. Sup. Ct. R. 7, Section 10.07 and Admitted to this Court Pro Hac Vice*

s/ Miranda Jones
Miranda Jones (B.P.R. No. 36070)
Assistant Attorney General
Miranda.Jones@ag.tn.gov

Law Enforcement and
Special Prosecutions Division
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 532-1600
Fax: (615) 532-4892
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and served through the electronic filing system on this the 8th day of October 2021, upon the following:

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road
Suite 300
Southport, NC 28461
Phone: 910-713-8804
Fax: 910-672-7705
Email: law.rmd@gmail.com

William Aaron Sack
Firearms Policy Coalition
1215 K Street
17th Floor
Sacramento, CA 95814
Phone: 916-596-3492
Email: wsack@fpclaw.org
*Counsel for Plaintiffs*

s/ Miranda Jones
Miranda Jones