## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **BLAKE BEELER,** | : | |
| **LOGAN OGLE, and** | : | |
| **FIREARMS POLICY** | : | |
| **COALITION, INC.,** | : | |
| | : | |
| Plaintiffs | : | Civil Rights Complaint |
| | : | *First Amended Complaint* |
| | : | 42 U.S.C. § 1983 |
| | : | |
| | : | Civil Action No. 3:21-cv-00152 |
| | : | |
| **v.** | : | |
| | : | |
| **JONATHAN SKRMETTI, in his** | : | |
| **official capacity as Attorney** | : | |
| **General of Tennessee,**[1] **and** | : | |
| | : | |
| **JEFF LONG, in his official** | : | |
| **Capacity as Commissioner** | : | |
| **of the Tennessee Department** | : | |
| **of Safety and Homeland Security,** | : | |
| | : | |
| Defendants | : | |
| | : | |

## <u>COMPLAINT</u>

COME NOW Plaintiffs Blake Beeler, Logan Ogle, Firearms Policy Coalition,

Inc., and the similarly situated members of Firearms Policy Coalition (collectively,

---

[1]      Defendant Skrmetti is automatically substituted for former Attorney General Herbert Slatery, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

"Plaintiffs"), and complain of Defendants Jonathan Skrmetti and Jeff Long (collectively "Defendants") as follows:

## INTRODUCTION

1.  "[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). This right presumptively "belongs to all Americans," not "an unspecified subset." *District of Columbia v. Heller*, 554 US. 570, 580, 581 (2008).

2.  And this right "guarantee[s] the individual right to possess and carry weapons *in case of* confrontation," *Heller*, 554 U.S. at 592 (italics added), which necessarily means the full exercise of this right requires the ability to carry a loaded handgun in public for self-defense and other lawful purposes.

3.  In Tennessee, all ordinary law-abiding adults over the age of 21 are eligible for handgun carry permits for these purposes, which the State *shall* issue upon a demonstration of eligibility, and they are even eligible for *permitless* carry. But all ordinary law-abiding 18-to-20-year-olds are categorically *ineligible* for any such permit and any permitless carry solely on account of their age.

4.  The right to "carry a handgun for self-defense outside the home" and "in case of confrontation" fully extends to law-abiding young adults 18-to-20 years old. Therefore, to survive under *Bruen*, Tennessee must justify its

2

discriminatory classification of this group with historical evidence proving this restriction is *not* "inconsistent with the Second Amendment," 142 S.Ct. at 2131, based on the text of the Amendment as informed by the history and tradition of this Nation at the time of the Founding, *id.* at 2129-30.

5. The State cannot carry its burden of proving the existence of "a distinctly similar historical regulation" that burdened the right to bear arms in the same way and for the same reasons. *Bruen*, 142 S. Ct. at 2131, 2133. Instead, the relevant historical evidence weighs heavily in favor of upholding the right to carry loaded handguns in public for 18-to-20-year-olds, just the same as for those who are 21 years and older. They are squarely among "the people" for whom the Second Amendment guarantees were created. They were not only allowed to keep and bear arms without *any* restriction but *required* to do so during the Founding era that shaped the liberties enshrined in the Amendment.

6. The individual Plaintiffs in this case, Plaintiffs Beeler and Ogle, unquestionably are legal adults. They, and other young adult Tennesseans like them, can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join the armed forces, and be held fully accountable before the law for criminal conduct—including numerous firearms-related offenses—to the point of being executed, *see* 18 U.S.C. § 3591. As adults, there are no parents or other legal guardians responsible for their care and protection.

3

7. Plaintiffs Beeler and Ogle, and the similarly situated members of Plaintiff Firearms Policy Coalition, desire to exercise their fundamental, constitutionally guaranteed right to carry loaded handguns on their person, outside their homes, while in public, for lawful purposes including immediate self-defense and other lawful purposes, as the Second Amendment guarantees "the people" are entitled to do.

8. They would exercise this right but for sections 39-17-1307(a)(1), (a)(2), (g)(1), 39-17-1351(b)-(c), and 1366(b)(3) of the Tennessee Annotated Code, and the related regulations, policies, procedures, practices, and customs that Defendants are actively administering, implementing, and enforcing against them, which deem them categorically *ineligible* for any permit to carry a loaded handgun in public, categorically *ineligible* for any permitless carry, and which otherwise generally bar them from exercising the full scope of public carry rights they would otherwise be entitled to exercise, solely on account of their age (collectively, the "Challenged Scheme").

9. The Challenged Scheme must be declared unconstitutional and enjoined.

# PARTIES

## *Plaintiff Blake Beeler*

10. Plaintiff Blake Beeler is a natural person, over the age of 18 but under the age of 21, a citizen of Knox County, Tennessee and the United States, and a member of Plaintiff Firearms Policy Coalition.

11. Plaintiff Beeler is not prohibited from possessing or acquiring firearms under state or federal law.

12. It is Plaintiff Beeler's present intention and desire to procure a concealed handgun carry permit or enhanced handgun carry permit to be able to lawfully carry a loaded handgun in public, including for purposes of self-defense, or to otherwise exercise the full scope of public carry rights he would be entitled to lawfully exercise but for the Challenged Scheme's age-based restrictions, without being subject to criminal sanction under the Challenged Scheme.

13. However, due to Defendants' active administration, implementation, and enforcement of the Challenged Scheme, Plaintiff Beeler is and will remain precluded from obtaining either of the State's handgun permits and from otherwise lawfully carrying a loaded handgun in public without a permit like his adult counterparts over the age of 21 are allowed to do.

14. Consequently, Plaintiff Beeler is and will otherwise remain subject to the carry restrictions under Section 39-17-1307, which bar him on pain of

5

criminal penalty from carrying a loaded handgun in public for self-defense or other lawful purposes.

### *Plaintiff Logan Ogle*

15. Plaintiff Logan Ogle is a natural person, over the age of 18 but under the age of 21, a citizen of Knox County, Tennessee and the United States, and a member of Plaintiff Firearms Policy Coalition.

16. Plaintiff Ogle is not prohibited from possessing or acquiring firearms under state or federal law.

17. It is Plaintiff Ogle's present intention and desire to procure a concealed handgun carry permit or enhanced handgun carry permit to be able to lawfully carry a loaded handgun in public, including for purposes of self-defense, or to otherwise exercise the full scope of public carry rights he would be entitled to lawfully exercise but for the Challenged Scheme's age-based restrictions, without being subject to criminal sanction under the Challenged Scheme.

18. However, due to Defendants' active administration, implementation, and enforcement of the Challenged Scheme, Plaintiff Ogle is and will remain precluded from obtaining either of the State's handgun permits and from otherwise lawfully carrying a loaded handgun in public without a permit like his adult counterparts over the age of 21 are allowed to do.

19. Consequently, Plaintiff Ogle is and will otherwise remain subject to the carry restrictions under Section 39-17-1307, which bar him on pain of criminal penalty from carrying a loaded handgun in public for self-defense or other lawful purposes.

*Plaintiff FPC*

20. Plaintiff Firearms Policy Coalition Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

21. FPC's members reside both within and outside Tennessee. FPC represents its members—who include gun owners, prospective gun owners, and others—and brings this action on behalf of member-Plaintiffs Beeler and Ogle and all its similarly situated members.

22. FPC's members, including the Plaintiffs Beeler and Ogle, and all similarly situated members, have been adversely and directly harmed by Defendants' administration, implementation, and enforcement of the Challenged Scheme.

7

### *Defendant Jonathan Skrmetti*

23. Defendant Jonathan Skrmetti is the Attorney General of Tennessee and is responsible for overseeing, implementing, and enforcing the Challenged Scheme restricting the public carry rights at issue.

24. Defendant Skrmetti is sued in his official capacity.

### *Defendant Jeff Long*

25. Defendant Jeff Long is the Commissioner of the Tennessee Department of Safety and Homeland Security ("TNDS").

26. The TNDS is responsible for enforcing the State's criminal laws and implementing and administering certain regulatory programs, including the Challenged Scheme restricting the public carry rights at issue. *See* https://www.tn.gov/safety/tnhp/handgun.html.

27. The Tennessee Highway Patrol ("THP"), which is charged with the enforcement of the State's criminal laws throughout Tennessee, is a division of the TNDS. *See* https://publications.tnsosfiles.com/rules/1340/1340-history.pdf (Rules of Tennessee Department of Safety and Homeland Security, listing the Highway Patrol as a division of the TNDS).

28. As such, Defendant Long is responsible for administering, implementing, and enforcing by and through TNDS and the THP the Challenged Scheme.

29. Defendant Long is sued in his official capacity.

8

## JURISDICTION AND VENUE

30. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

31. This action based on a violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

32. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Tennessee.

## THE CHALLENGED SCHEME

33. Until recently, Tennessee had imposed a general bar against all ordinary citizens[2] that prohibited the carry of handguns in public, openly or concealed, without the acquisition of one of two state-issued permits: an "enhanced handgun carry permit" under Tenn. Code Ann. § 39-17-1351 or a "concealed handgun carry permit" under Tenn. Code Ann. § 39-17-1366. Former Tenn.

---

[2]     Special classifications were created for certain members of law enforcement, the military, or the judiciary, exempting them from the general bar. Tenn. Code Ann. §§ 39-17-1308(a)(2), (a)(6), (a)(7), (a)(10), (a)(11), 39-17-1315(a).

9

Code Ann. § 39-17-1307(a)(1) (generally prohibiting the unlicensed carry of firearms "with the intent to go armed"); former Tenn. Code Ann. § 39-17-1308(a)(2) (establishing that a permit to carry a handgun pursuant to §§ 39-17-1351 or 39-17-1366 is a defense to prosecution for a violation of § 39-17-1307); former § 39-17-1366(b)(3) (requiring that applicants be eligible pursuant to § 39-17-1351(b) to obtain a concealed handgun carry permit).[3]

34. This licensure exception to the general bar on carrying handguns in public, however, did not extend to adults under 21 years of age, all of whom were left with no lawful avenue to exercise these public carry rights (unless they fit within the limited class of young adults who were at least 18 years old and active or honorably discharged members of the state or federal armed forces). Former Tenn. Code Ann. §§ 39-17-1351(b)-(c), 39-17-1366(b)(3).

35. The scheme created "defenses to prosecution" under section 39-1307 for (1) the possession, display, or employment of a handgun contemporaneously with an act of justifiable self-defense or defense of another "during the commission of a crime in which that person or the other person defended was a victim"

---

[3]     The only exceptions to this general permit requirement for ordinary law-abiding citizens were for the carrying of a handgun *unloaded* (without any ammunition "in the immediate vicinity of the person or weapon"), while *not* in public (specifically, at one's own place of residence, place of business, or other personal premises), hunting and sporting shooting, and "possessing a rifle or shotgun while engaged in the lawful protection of livestock from predatory animals." Tenn. Code Ann. § 39-17-1308(a)(1), (a)(3), (a)(4), & (a)(5).

and (2) or "discharging a firearm within the limits of the municipality if it is determined that when the firearm was discharged the person was acting in justifiable self-defense, defense of property, defense of another, or to prevent a criminal offense from occurring." Tenn. Code Ann. § 39-17-1322(a)-(b).

36. According to the express terms of the scheme, these "defenses to prosecution" did not apply to the carrying of a handgun at any time other than "*during* the commission a crime" in which the person acted in justifiable self-defense or defense of another or "*when* the firearm was discharged" in justifiable self-defense, defense of property, defense of another, or to prevent a criminal offense from occurring. Former § 39-17-1322(a)-(b) (italics added).

37. Effective July 1, 2021, this statutory scheme was amended by Senate Bill 765 under Tennessee Public Chapter No. 108 ("PC 108").

38. The PC 108 amendments retained the same general restrictions on the carrying of loaded handguns in public under section 39-17-1307, the same general carry licensing scheme under sections 39-17-1351 and 39-17-1366, and the same limited "defenses to prosecution." However, the amendments established a new exception for permitless public carry under a new subdivision (g), as follows (hereinafter the "PC 108 Exception"):

(g) It is an exception to the application of subsection (a) that a person is carrying, whether openly or concealed, a handgun and:
        (1)(A) The person is at least twenty-one (21) years of age; or

11

(B) The person is at least eighteen (18) years of age and [is a current or honorably discharged member of the armed forces];
[¶ … ¶]
(2) The person lawfully possesses the handgun; and
(3) The person is in a place where the person is lawfully present.

Tenn. Code Ann. §§ 39-17-1307(g)(1)-(3).

39. As the text of the amended law shows, the permitless carry PC 108 Exception continues the general prohibition against the carrying of handguns by young adults, because it expressly applies only to individuals who are at least 21 years old and expressly excludes all 18-to-20-year-olds (with the narrow exception of those who are active or honorably discharged members of the state or federal armed forces). Tenn. Code Ann. § 39-17-1307(g).

40. The first violation of section 1307's proscriptions against the public carrying of handguns is a Class A misdemeanor subjecting the violator to a fine of up to $500 and "possible imprisonment as provided by law." Any subsequent violation is a Class B misdemeanor punishable by a fine up to $500, incarceration for up to six months, or both. It is a Class A misdemeanor punishable by a fine up to $2,500, incarceration for up to eleven months, twenty-nine days, or both, "if the person's carrying of a handgun occurred at a place open to the public where one (1) or more persons were present." Tenn. Code Ann. § 39-17-1307(a)(2)(A)-(C).

12

41. Accordingly, Plaintiffs Beeler and Ogle and all similarly situated members of Plaintiff FPC are statutorily disqualified from obtaining either of the State's handguns carry permits, they are statutorily disqualified from the PC 108 Exception for permitless carry, and they are otherwise disqualified from exercising the full scope of public carry rights they would be entitled to exercise but for the Challenged Scheme's restrictions, because, although they are law-abiding adults over 18 years old, they are under 21 years old.

42. Specifically, under the Challenged Scheme (Tenn. Code Ann. §§ 39-17-1307(a)(1), (a)(2), (g)(1), 39-17-1351(b)-(c), and 1366(b)(3), and the related regulations, policies, procedures, practices, and customs that Defendants are actively administering, implementing, and enforcing against them, Plaintiffs Beeler and Ogle and all similarly situated members of Plaintiff FPC are subject to criminal prosecution and sanction for carrying a handgun in public solely on the basis of their being young adults under the age of 21.

43. The Challenged Scheme therefore categorically blocks the sole means of access for this entire class of law-abiding individuals to carry a loaded handgun in public in the State of Tennessee lawfully and without being subject to criminal prosecution or sanction.

44. Defendants' active administration, implementation, and enforcement of the Challenged Scheme is in direct violation of the Second and Fourteenth Amendments to the United States Constitution, necessitating this action.

## THE IMPACT OF THE BAN ON THE PLAINTIFFS

### *Facts Relating to Plaintiff Beeler*

45. The foregoing paragraphs are incorporated herein as if set forth in full.

46. Plaintiff Beeler is a 19-year-old resident of Knox County, Tennessee.

47. Plaintiff Beeler is a law-abiding, responsible citizen.

48. Plaintiff Beeler is not a member of any federal or state branch or unit of armed forces.

49. Plaintiff Beeler is a member of Plaintiff FPC.

50. Plaintiff Beeler currently works part-time while attending college.

51. For self-defense and other lawful purposes, Plaintiff Beeler desires to carry a loaded handgun in public outside of the home.

52. Plaintiff Beeler's work schedule is such that he must leave home at 4:00 a.m. to arrive on time. The route he must travel to his place of work is through "rough" areas generally known to pose risks to one's personal safety and property, particularly during the late night and early morning hours.

53. Plaintiff Beeler would lawfully acquire and carry on his person a loaded handgun for personal safety, as well as for other lawful purposes, but for the

14

prohibitions under the Challenged Scheme that render him statutorily ineligible for either of the State's handgun permits and otherwise bar him from exercising the full scope of public carry rights that he would be entitled to lawfully exercise but for the Challenged Scheme's age-based restrictions.

54. Based on Defendants' active administration, implementation, and enforcement of the Challenged Scheme, Defendants are precluding and will continue to preclude Plaintiff Beeler from obtaining either of the State's handgun carry permits, from qualifying for any permitless carry under the PC 108 Exception, and from otherwise exercising the full scope of public carry rights he would be entitled to exercise but for the Challenged Scheme's age-based restrictions, thereby actively subjecting him to criminal prosecution and sanction under Tenn. Code Ann. § 39-17-1307 for carrying or attempting to carry a loaded handgun outside the home in public for lawful purposes.

55. Thus, although Plaintiff Beeler can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join or be drafted into the armed forces, be called upon for federal and state militia service, and even be held fully accountable before the law for criminal actions to the point of being executed, (*see* 18 U.S.C. § 3591), Defendants' active administration, implementation, and enforcement of the Challenged Scheme bars and will continue to bar Plaintiff Beeler from obtaining a permit to carry a loaded handgun in public

or otherwise lawfully carrying a handgun in public without a permit and thus bars and will continue to bar his right to carry a loaded handgun in public for lawful purposes throughout this State under Section 39-17-1307.

56. Ironically, pursuant to Tennessee's law, Section 39-17-1307, *et seq*., 18-to-20-year-olds may be prosecuted for numerous firearms-related offenses and are thereby considered mature enough to be held fully accountable for all their criminal actions. Yet, under the Challenged Scheme that Defendants are actively enforcing and will continue to enforce absent the relief requested herein, even the most law-abiding 18-to-20-year-olds are deemed categorically too immature and irresponsible to carry loaded handguns in public for self-defense or any other lawful purpose. This is so even though under the Challenged Scheme they would, overnight, purportedly become mature and responsible enough if they were to join the military.

57. Plaintiff Beeler is a responsible, law-abiding, peaceable citizen who is otherwise fully eligible for one of the State's handgun permits and for permitless carry under the PC 108 Exception, and he has no history of violent behavior or other conduct that would pose any threat or danger to the public.

58. Plaintiff Beeler desires to obtain one of the State's permits to carry a loaded handgun in public, or to otherwise be eligible for permitless carry, so that he would be exempt from the restrictions under Section 39-17-1307 and be able

16

to carry a loaded handgun in public in the lawful exercise of his fundamental right to keep and bear arms for self-defense and other lawful purposes.

59. Plaintiff Beeler has abstained from carrying a loaded handgun in public for all lawful purposes including self-defense, based on a real risk and credible fear of arrest, prosecution, monetary sanction, and incarceration pursuant to Tenn. Code Ann. § 39-17-1307, as implemented, enforced, directed, and otherwise propagated by Defendants under the Challenged Scheme, should he carry or attempt to carry a loaded handgun in public for lawful purposes.

60. Absent the relief sought herein, Plaintiff Beeler will have no choice but to continue abstaining from the exercise of this fundamental right.

61. Because Plaintiff Beeler is a law-abiding citizen and he would face criminal sanction for any attempt to carry a loaded handgun in public in violation of the Challenged Scheme, Defendants' active administration, implementation, and enforcement of Tenn. Code Ann. §§ 39-17-1307(a)(1), (a)(2), (g)(1), 39-17-1351(b)-(c), and 1366(b)(3), and the related regulations, policies, practices, and customs designed to implement and enforce the same, has forced Plaintiff Beeler to refrain from exercising his fundamental right to carry a loaded handgun in public for self-defense and other lawful purposes.

17

## *Facts Relating to Plaintiff Ogle*

62. The foregoing paragraphs are incorporated herein as if set forth in full.

63. Plaintiff Ogle is a 20-year-old resident of Knox County, Tennessee.

64. Plaintiff Ogle is a law-abiding, responsible citizen.

65. Plaintiff Ogle is not a member of any federal or state branch or unit of armed forces.

66. Plaintiff Ogle is a member of Plaintiff FPC.

67. Plaintiff Ogle is a full-time student.

68. For self-defense and other lawful purposes, Plaintiff Ogle desires to carry a loaded handgun in public outside of the home.

69. Plaintiff Ogle desires to be able to effectively defend himself outside the home by carrying a loaded handgun in public.

70. Plaintiff Ogle also desires to be able to effectively defend his parents, both of whom have health issues, while he is out in public in their company.

71. Plaintiff Ogle lawfully owns and possesses a Sig model M17 handgun that he would carry loaded in public for such defensive purposes but for the prohibitions under the Challenged Scheme that render him statutorily ineligible for either of the State's handgun permits and that otherwise bar him from exercising the full scope of public carry rights he would be entitled to lawfully exercise but for the Challenged Scheme's age-based restrictions.

18

72. Based on Defendants' active administration, implementation, and enforcement of the Challenged Scheme, Defendants are precluding and will continue to preclude Plaintiff Ogle from obtaining either of the State's handgun carry permits, from qualifying for any permitless carry under the PC 108 Exception, and from otherwise exercising the full scope of public carry rights he would be entitled to exercise but for the Challenged Scheme's age-based restrictions, thereby actively subjecting him to criminal prosecution and sanction under Tenn. Code Ann. § 39-17-1307 for carrying or attempting to carry a loaded handgun outside the home in public for lawful purposes.

73. Thus, although Plaintiff Ogle can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join or be drafted into the armed forces, be called upon for federal and state militia service, and even be held fully accountable before the law for criminal actions to the point of being executed, (*see* 18 U.S.C. § 3591), Defendants' active administration, implementation, and enforcement of the Challenged Scheme bars and will continue to bar Plaintiff Ogle from obtaining a permit to carry a loaded handgun in public or otherwise lawfully carrying a handgun in public without a permit and thus bars and will continue to bar his right to carry a loaded handgun in public for lawful purposes throughout this State under Section 39-17-1307.

19

74. Ironically, pursuant to Tennessee's law, Section 39-17-1307, *et seq*., 18-to-20-year-olds may be prosecuted for numerous firearms-related offenses and are thereby considered mature enough to be held fully accountable for all their criminal actions. Yet, under the Challenged Scheme that Defendants are actively enforcing and will continue to enforce absent the relief requested herein, even the most law-abiding 18-to-20-year-olds are deemed categorically too immature and irresponsible to carry loaded handguns in public for self-defense or any other lawful purpose. This is so even though under the Challenged Scheme they would, overnight, supposedly become mature and responsible enough if they were to join the military.

75. Plaintiff Ogle is a responsible, law-abiding, peaceable citizen who is otherwise fully eligible for one of the State's handgun permits and for permitless carry under the PC 108 Exception, and he has no history of violent behavior or other conduct that would pose any threat or danger to the public.

76. Plaintiff Ogle desires to obtain one of the State's permits to carry a loaded handgun in public, or to otherwise be eligible for permitless carry, so that he would be exempt from the restrictions under Section 39-17-1307 and be able to carry a loaded handgun in public in the lawful exercise of his fundamental right to keep and bear arms for self-defense and other lawful purposes.

77. Plaintiff Beeler has abstained from carrying a loaded handgun in public for all lawful purposes including self-defense, based on a real risk and credible fear of arrest, prosecution, monetary sanction, and incarceration pursuant to Tenn. Code Ann. § 39-17-1307, as implemented, enforced, directed, and otherwise propagated by Defendants under the Challenged Scheme, should he carry or attempt to carry a loaded handgun in public for lawful purposes.

78. Absent the relief sought herein, Plaintiff Ogle will have no choice but to continue abstaining from the exercise of this fundamental right.

79. Because Plaintiff Ogle is a law-abiding citizen and he would face criminal sanction for any attempt to carry a loaded handgun in public in violation of the Challenged Scheme, Defendants' active administration, implementation, and enforcement of Tenn. Code Ann. §§ 39-17-1307(a)(1), (a)(2), (g)(1), 39-17-1351(b)-(c), and 1366(b)(3), and the related regulations, policies, practices, and customs designed to implement and enforce the same, has forced Plaintiff Ogle to refrain from exercising his fundamental right to carry a loaded handgun in public for self-defense and other lawful purposes.

### *Facts Relating to Plaintiff Firearms Policy Coalition*

80. The foregoing paragraphs are incorporated herein as if set forth in full.

81. FPC is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada.

82. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom.

83. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

84. FPC has members throughout the United States, who reside both within and outside Tennessee.

85. FPC represents its members and supporters, who include gun owners, prospective gun owners, licensed firearm retailers, and others.

86. FPC brings this action on behalf of Plaintiffs Beeler and Ogle and its similarly situated young adult members.

87. All such members of FPC have been adversely and directly harmed by Defendants' administration, implementation, and enforcement of the Challenged Scheme, and they will continue to be so adversely and directly affected absent the relief sought herein.

88. FPC reasonably fears the prosecution of Plaintiffs Beeler and Ogle and its similarly situated members by and through Defendants' administration, implementation, and enforcement of the Challenged Scheme.

## COUNT I:
## VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS
### (*All Plaintiffs v. All Defendants*)

89.  The foregoing paragraphs are hereby incorporated herein as if set forth in full.

### *The Constitutional Framework*

90.  The Second Amendment of the United States Constitution provides that "the right of the people to keep and bear arms shall not be infringed." This constitutional guarantee is incorporated against the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010); *id.* at 806 (Thomas, J., concurring).

91.  The Amendment enshrines " 'the right of law-abiding, responsible citizens to use arms' for self-defense . . . [and] demands our unqualified deference." *Bruen*, 142 S.Ct. at 2131 (quoting *Heller*, 554 U.S. at 635).

92.  The right "protect[s] an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S.Ct. at 2122, and presumptively "belongs to all Americans," not "an unspecified subset," *Heller*, 554 U.S. at 580, 581, 592.

93.  The importance of the asserted government interest cannot justify restrictions that conflict with the rights secured under the Second Amendment. Rather, in assessing the constitutionality of restrictions on the rights secured under the

Second Amendment, courts must focus on the text of the Amendment as informed by the history and tradition of this Nation at the time of its founding:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 142 S.Ct. at 2129–30.

94. *Bruen* reaffirms what has been clear since the time of *Heller*: the burden rests squarely on the shoulders of the government to *prove* the constitutionality of its restriction based on this historical framework. *Bruen*, 142 S.Ct. at 2130 (quoting *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) (italics original in *Bruen*) ("This Second Amendment standard accords with how we protect other constitutional rights," like in the First Amendment context, where "'the Government bears the burden of proving the constitutionality of its actions,'" by "point[ing] to *historical evidence* about the reach of the First Amendment's protections").

95. The Sixth Circuit recognized this even before *Bruen*. *See Stimmel v. Sessions*, 879 F.3d 198, 204 (6th Cir. 2018) (quoting *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678, 688 (6th Cir. 2016) ("the government must 'conclusively demonstrate that the challenged statute burdens persons historically understood to be unprotected' by the Amendment").

24

*The Carry Rights of Young Adults Secured Under the Second Amendment*

96. The text of the Second Amendment leaves no doubt that it extends to typical, law-abiding 18-to-20-year-olds. On its face, the right to keep and bear arms belongs to "the people" as a whole, U.S. CONST. amend. II, not just the subset of people who are 21 or older.

97. The "normal and ordinary meaning" of "the people" includes *all* the people. *Bruen*, 142 S. Ct. at 2127. As the Supreme Court made clear at the time of *Heller*, "the Second Amendment right is exercised individually and belongs to *all* Americans." 554 U.S. at 581 (emphasis added).

98. The Amendment's reference to the "militia" further makes clear that the right fully vests by age 18. At the Founding, the "militia" was widely understood to refer to "all able-bodied men," *Heller*, 554 U.S. at 596, including in the unanimous judgment of the federal government and every state in the union, all men at least 18 years of age, *Jones v. Bonta*, 34 F.4th 704, 718–19 & App'x 2 (9th Cir. 2022) (collecting post-ratification state militia laws).

99. Indeed, just months after ratification of the Second Amendment, Congress enacted the Militia Act of 1792, which *required* all able-bodied men to enroll in the militia and to arm themselves *upon turning 18*. Act of May 8, 1792, 1 Stat. 271 (1792). Shortly after the federal age for militia participation was set at 18, every state set the age at 18 as well. *Jones* at 719 & App'x 2.

Case 3:21-cv-00152-KAC-DCP   Document 30   Filed 09/06/22   Page 25 of 41   PageID #: 228

100. While *Heller* makes clear that the Second Amendment enshrines "an individual right unconnected with militia service," 554 U.S. at 582, such that 18-to-20-year-olds are included within the general rights secured for all "the people," the unanimous inclusion of this group in organized militias at or shortly after the passage of the Second Amendment establishes that they *must* have *also* been included within "the militia" referenced in the text of the Second Amendment, *id.*; *see also Hirschfeld*, 5 F.4th 407, 429–30 ("Because the individual right is broader than the Second Amendment's civic purpose, those required to serve in the militia and bring arms would most assuredly have been among 'the people' who possessed the right.").

101. This same understanding of the nature and scope of the rights secured under the Second Amendment actually persisted well beyond the time of the Founding. In 1880, following the ratification of the Fourteenth Amendment, Thomas Cooley wrote this in interpreting the Second Amendment's text: "It might be supposed from the phraseology of this provision that the right to keep and bear arms was only guaranteed to the militia; but this would be an interpretation not warranted by the intent. . . . The meaning of the provision undoubtedly is, that the people, from whom the militia must be taken, shall have the right to keep and bear arms; and they need no permission or regulation of law for the purpose." THOMAS M. COOLEY, THE GENERAL

PRINCIPLES OF CONSTITUTIONAL LAW IN THE UNITED STATES OF AMERICA at 271 (1880); *see Heller*, 554 U.S. at 618 ("All other post-Civil War 19th-century sources we have found concurred with Cooley.").

102. Further, the Constitution's individual amendments and clauses must be interpreted "in the context of the Constitution as a whole." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325–26 (2015). We can see that the Constitution elsewhere explicitly considers and prescribes limits based on age. *See, e.g.*, U.S. CONST. art. I, § 2, cl. 2 (must be 25 years old to serve in the House of Representatives); *id.* amend. XXVI (voting age at 18). "In other words, the Founders considered age and knew how to set age requirements but placed no such restrictions on rights, including those protected by the Second Amendment." *Hirschfeld v. BATFE*, 5 F.4th 407, 421 (4th Cir. 2021), *vacated on mootness grounds*, 14 F.4th 322, 328 (4th Cir. 2021).

103. And in the two other provisions in the Bill of Rights that explicitly describe a right of "the people" generally, the First and the Fourth Amendments, the rights extend fully to 18-year-olds and in fact extend to *the whole people*, even those under 18. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969) ("Students . . . are 'persons' under our Constitution [who] are possessed of fundamental rights which the State must respect"). Even where "the people" does not appear, *every other constitutional right* applies *at least*

27

to those 18 and older. *Hirschfeld*, 5 F.4th at 422–23 (noting that the right to jury trial, voting, marriage, and sex apply at least to those 18 years old).

104. Thus, "the plain text of the Second Amendment, as informed by Founding-Era history and tradition, covers the proposed course of conduct and permits law-abiding 18-to-20-year-olds to carry a handgun for self-defense outside the home." *Firearms Policy Coalition v. McCraw*, __ F.Supp.3d __, 2022 WL 3656996, *6 (N.D. Texas Aug. 25, 2022).

### *No Historical Analogue Exists that Would Justify the Challenged Scheme*

105. Following *Bruen*, if a law restricts conduct falling within the scope of the Second Amendment's text, as the Challenged Scheme does, that law is presumed invalid and can only be saved if the Defendants prove the existence of "a distinctly similar historical regulation" that burdened the right to bear arms in the same way and for the same reasons. 142 S. Ct. at 2131, 2133.

106. That task is an impossible one here.

107. It is important to keep in mind that "when it comes to interpreting the Constitution, not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.'" *Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–35 (emphasis in *Bruen*)). The Supreme Court has "generally assumed that the scope of the protection applicable to the Federal Government and States is

28

pegged to the public understanding of the right when the Bill of Rights was adopted in 1791," *Bruen* at 2137; *see also Gamble v. United States*, 139 S. Ct. 1960, 1975–76 (2019) (noting that the relevant inquiry is "the public understanding in 1791 of the right codified by the Second Amendment"), as opposed to 1868 when the Fourteenth Amendment was ratified.

108. Although 1791 is the key year by which to judge the value of historical evidence regarding the Second Amendment's scope, the difference between 1791 and 1868 in this case is not significant. As discussed in detail below, the unanimous practice from the Founding of permitting 18-to-20-year-olds to exercise their Second Amendment rights on equal footing with other adults was still the overwhelming majority practice in the states in 1868.

109. Even before the Founding era, "[t]he tradition of young adults keeping and bearing arms [was] deep-rooted in English law and custom" and "was brought across the Atlantic by the American colonists." *Jones*, 34 F.4th at 717. As discussed above, immediately after the Amendment was ratified the age for militia participation was set by every state and the federal government at 18. This requirement means that not only were 18-year-olds at the Founding entrusted with bearing arms during their time participating in militia service, but they were also expected to keep and maintain their arms at the ready as private citizens who could be called to service at any moment. *United States*

*v. Miller*, 307 U.S. 174, 179 (1939) ("[W]hen called for service these men were expected to appear bearing arms supplied by themselves.").

110. Further, young adults were expected to bear arms as part of *posse comitatus*, which "allowed sheriffs and others to compel citizens to serve in the name of the state to execute arrests, level public nuisances, and keep the peace, upon pain of fine and imprisonment." *Jones*, 34 F.4th at 718, 722. Similarly, at common law by age 18 all able-bodied men "were obliged to join in the 'hue and cry' (*hutesium et clamor*) to pursue fleeing criminals." David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. ILL. U. L.J. 495, 534 (2019).

111. Fully consistent with this history, at the time the Second Amendment was ratified, there *no laws in any state* that purported to limit the rights of 18-to-20-year-olds to carry firearms for self-defense.

112. There is simply not a shred of evidence from the Founding era of any "historical analogue" that constrained 18-to-20-year-olds' exercise of their Second Amendment rights in any way like the Challenged Scheme does here. *See FPC v. McCraw*, 2022 WL 3656996 at *11 ("the record stops short and does not show any "historical analogs" from the Founding Era").

113. After exhaustively surveying historical gun regulations related to firearm purchasing by young adults, the *Hirschfeld* court found that "[w]hile some

30

gun regulations existed at the Founding, there were no regulations restricting minors' ability to possess or purchase weapons until two states adopted such laws in 1856' " during the Reconstruction era (1863-1877). 5 F.4th at 437.

114. Leading up to 1856, "there is not just a vacuum at the founding era: instead, the founding-era evidence of militia membership undermines" the importance of these Reconstruction-era outliers. *Jones*, 34 F.4th at 722.

115. Indeed, within the small handful of laws that regulated access to firearms by those under 21 at all, two of them grew out of the Civil War period (1861-1865), one from Alabama and one from Tennessee. *See Jones*, 34 F.4th at 720 & App'x 3; 1856 Ala. Acts. 17, 17; 1856 Tenn. Pub. Acts 92, 92. And "[i]t would also be strange to rely on two southern laws restricting gun rights that were enacted before the Civil War given Congress's grave concerns about southern states disarming freed Blacks during this period." *Hirschfeld*, 5 F.4th at 440; *see also McDonald*, 561 U.S. at 770–78; *Jones*, 34 F.4th at 722 (noting the "deeply offensive nature of many of" "the Reconstruction-era laws" restricting the Second Amendment rights of 18-to-20-year-olds).

116. Besides that, in 1888, just two other states, Kansas and Wisconsin, enacted laws restricting the possession or carry of pistols or revolvers by 18-to-20-year-olds. 1883 Wis. Sess. Laws 290; 1883 Kan. Sess. Laws 159. And, around this same time, in 1885, New York enacted a similar law that applied only to

those *under* 18, thus expressly leaving 18-to-20-year-olds unregulated in their rights to carry and possess firearms. N.Y. Penal Code ch. 375 § 1 (1885).

117. Otherwise, laws restricting the firearms rights of young adults during the Reconstruction and post-Reconstruction era regulated only *sales to* such individuals. *Jones*, 34 F.4th at 720. The distinctly more limited nature of such restrictions matters in determining the existence of "a distinctly similar historical regulation" to the Challenged Scheme. *Bruen*, 142 S.Ct. at 2131. Those subject to such laws would have still, in many cases, been able to lawfully acquire a pistol from a parent or legal guardian and be subject to the same laws governing the carry of firearms as older citizens, meaning that, once acquired, they could possess, carry, and use such arms just the same.

118. Further, the majority of the laws imposing any firearm restrictions at all against 18-to-20-year-olds (including both the Kansas and Wisconsin laws discussed above) did so specifically because, at the time, they were deemed "minors" who, along with those *under* 18, were considered under the legal protection of their parents or guardians. 1 BLACKSTONE COMMENTARIES *441; *see FPC v. McCraw*, 2022 WL 3656996 at * 10 ("States did not enact legislation lowering the age of majority to 18 until the 1970s."). That is no longer the case. Plaintiffs and all those similarly situated are legal adults. And we are not aware of any law from any potentially relevant

32

time frame that singled out the firearm rights of legal *adults* for special restrictions based on their being younger than other legal adults. *See, e.g.*, JOHN BOUVIER, 1 INSTITUTES OF AMERICAN LAW 148 (1851) (explaining that upon reaching the age of majority, "every man is in full enjoyment of his civil and political rights").

119. *Bruen* requires asking *both* "how and why" past laws infringed on the Second Amendment right, and historical laws can only serve as true analogues if their modern comparators are "comparably justified." *Bruen*, 142 S. Ct. at 2132–33. The record supports no such conclusion here, when there were *no* restrictions at all on the rights of 18-to-20-year-olds during the key period of the Founding era and only a small number of restrictions throughout the later (less significant) historical period, most of which applied to the then-broader class of "minors" and primarily involved restrictions on *sales to* 18-to-20-year-olds—not any sort of general prohibition against their carrying of loaded firearms anywhere in public for self-defense and other lawful purposes. *See FPC v. McCraw*, 2022 WL 3656996 at *11 (quoting *Bruen*, 142 S.Ct. at 2136) ("To uphold Texas's statutory prohibition on this record, this Court would have to 'giv[e] postenactment history more weight than it can rightly bear.'"); *id.* (enjoining "the Texas laws to the extent they prohibit law-abiding 18-to-20-year-olds from applying for a license to carry a handgun").

33

120. The history of Tennessee's own licensing scheme itself demonstrates the unconstitutionality of the bar it erects against 18-to-20-year-olds. It is and always has been a *shall*-issue licensing scheme, requiring the State to issue carry licenses so long as the applicant meets the necessary criteria, Tenn. Ann. Code §§ 1351(b), 1366(a), and "a shall-issue regime cannot allow a state to prohibit a class of persons from exercising their Second Amendment right solely based on their age," *FPC v. McCraw*, 2022 WL 3656996 at *9.

### The Challenged Scheme is Plainly Unconstitutional Under Bruen

121. As *Bruen* explained, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 142 S.Ct. at 2131. "Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* The Supreme Court described such situations as "fairly straightforward" applications of its historical framework. *Id.*

122. It is straightforwardly the case here that the Challenged Scheme "is inconsistent with the Second Amendment" based on the relevant history, *Bruen*, 142 S.Ct. at 2131, particularly when not a *single* restriction on the

34

firearms rights of 18-to-20-year-olds existed during the central period of the Founding era, throughout which they were *required* to keep and possess firearms at the ready in the service of their duties as members of the militia.

123. 42 U.S.C. § 1983 prohibits state actors from depriving a person of a federal constitutional rights under color of state law.

124. Plaintiffs Beeler and Ogle, and all similarly situated members of Plaintiff FPC, are law-abiding, peaceable citizens of Tennessee and the United States who desire to lawfully own, possess, and utilize firearms and ammunition, and to carry loaded handguns on public streets and public property throughout this State without being subjected to criminal prosecution under the Challenged Scheme that renders them ineligible for either of the State's handgun carry permits, that renders them ineligible for any permitless carry under the PC 108 Exception, and that otherwise bars them from exercising the full scope of public carry rights they would be entitled to exercise but for the Challenged Scheme's age-based restrictions.

125. Defendants have violated the right to keep and bear arms of Plaintiffs Beeler and Ogle and all those similarly situated members of Plaintiff FPC by and through their administration, implementation, and enforcement of the Challenged Scheme preventing them from carrying a loaded handgun on

35

public streets and public property in the lawful exercise of their fundamental right to do so.

126. The risk of conflict endangering one's personal safety commonly, if not most often, exists in public, away from the general security that one's home, place of business, or vehicle can provide. Limiting instances of lawful carrying of a loaded firearm to hunting, fishing, camping, sport shooting, and protecting livestock, and to the confines of one's car, boat, or home, as Defendants do, cuts off the ability to exercise this core right secured as a guarantee under the Second Amendment for everyone 18-to-20-years-old, except for the comparative few with direct ties to the armed forces.

127. The "defenses to prosecution" under Tenn. Code Ann. Section 39-17-1322 are no avenue to the exercise of the rights that the Challenged Scheme blocks. The plain language of section 39-17-1322 makes clear that no *affirmative statutory right* to carry a loaded firearm in public for lawful purposes exists. These are merely *defenses to a prosecution* for violating the prohibitions when "the person possessed, displayed or employed a handgun in justifiable self-defense or in justifiable defense of another during the commission of a crime in which that person or the other person defended was a victim" or discharged a firearm while "acting in justifiable self-defense, defense of property, defense of another, or to prevent a criminal offense from occurring."

36

128. Nothing prevents a person otherwise prohibited from carrying a loaded handgun in public from being *arrested* for engaging in such conduct and then *bearing the burden to prove* she possessed the firearm for one of the enumerated purposes in order to *avoid* being charged and convicted. That is the very nature of a *defense* to prosecution which necessarily rests on facts that the defendant herself must demonstrate in order claim the privilege. *See* Tenn. Ann. §§ 39-11-203–204; *Terrell v. State*, 361 S.W.2d 489, 492 ("where a negation is peculiarly within the knowledge of the defendant, the burden is on him to establish that fact. Thus, where a charge is made that the defendant carried on a certain business without a license, the fact that he has a license is peculiarly within his knowledge and he must establish that fact or suffer conviction."); *accord State v. McLerran*, 604 S.W.2d 841, 845 (1980).

129. The very fact that the scheme must expressly establish a *defense* to prosecution for *lawful* acts of self-defense, defense of others, and defense of property highlights the *presumptively unlawful* nature of such conduct for 18-to-20-year-olds and how they are specifically constrained from exercising the core rights of the Second Amendment. That the most the State provides is a *defense* to prosecution *only while actually engaging in lawful defensive acts* shows that the possession of a loaded handgun in public is *illegal* every second of every minute the person possesses one *even if* she is carrying it for

the specific purposes of being prepared for lawful defensive actions, because she is afforded no protection for any moment in time *before or after* she actually wields the arm for such a purpose. Absent divine intervention that would place the firearm in their possession *only* at the moment of the defensive act and then make it magically disappear immediately after the threat has dissipated, these individuals would necessarily violate the prohibition by simply *attempting to* carry the arm for such purposes.

130. The Second Amendment secures the right to be "armed *and ready for* offensive or defensive action in a case of conflict with another person," *Heller*, 554 U.S. at 584 (italics added)—i.e., it "guarantee[s] the individual right to possess and carry weapons *in case of* confrontation," *id.* at 592 (italics added)—not some severely circumscribed right to be armed *if and when* an attack actually occurs and then only at the *precise* moment of the attack, as the illusory protection of the "defenses to prosecution" purportedly provide.

131. Defendants' administration, implementation, and enforcement of the Challenged Scheme constitutes an infringement of and an impermissible burden upon the right of Plaintiffs Beeler and Ogle and all similarly situated members of Plaintiff FPC to keep and bear arms under the Second and Fourteenth Amendments of the U.S. Constitution, especially since this enforcement activity prevents them from exercising their essential right to

38

"wear, bear, or carry [a firearm] ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584.

132. Defendants' active administration, implementation, and enforcement of the Challenged Scheme forces Plaintiffs Beeler and Ogle and all similarly situated members of Plaintiff FPC to either comply with these draconian and unconstitutional prohibitions—and thereby relinquish their fundamental rights to exercise lawful armed defense of themselves, their loved ones, and their property—or be subjected to criminal prosecution and sanction.

133. Therefore, as a direct and proximate result of this infringement of and impermissible burden on the right of Plaintiffs Beeler and Ogle and all similarly situated members of Plaintiff FPC under the Second and Fourteenth Amendment rights, they have suffered an unlawful deprivation of their fundamental constitutional right to keep and bear arms and will continue to suffer such injury unless and until granted the relief they seek herein.

134. Plaintiffs have incurred attorney fees and costs as a direct result of prosecuting the present court action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, as follows:

39

a) Declare that the Challenged Scheme violates the right of Plaintiffs Beeler and Ogle, and all similarly situated members of Plaintiff FPC, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution;

b) Enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Plaintiffs Beeler and Ogle, and all similarly situated members of Plaintiff FPC, the Challenged Scheme that impedes or would impede them from exercising their right to keep and bear arms or sanction them for doing so;

c) Award Plaintiffs costs, attorney fees, and all other allowable expenses pursuant to 42 U.S.C. § 1988 and all applicable laws; and,

d) Grant any and all other equitable and/or legal remedies this Court may see fit.

Respectfully Submitted,

/s/ Jay L. Johnson
Jay L. Johnson
TN Bar No. 020155
JOHNSON LAW FIRM
105 Crook Avenue
PO Box 97
Henderson, TN 38340
P: 731-989-2608
E: jay@jayjohnsonlawfirm.com

Raymond M. DiGuiseppe*
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road

40

Suite 300
Southport, NC 28461
P: 910-713-8804
E: law.rmd@gmail.com
*Pro Hac Vice*

William Sack*
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 596-3492
E: wsack@fpclaw.org
*Pro Hac Vice*