```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TENNESSEE
 2                          AT KNOXVILLE, TENNESSEE
    _____
 3                                      )
    BLAKE BEELER, et al,                )
 4                                      )
          Plaintiffs,                   )
 5                                      )
    vs.                                 )   Case No. 3:21-CV-152
 6                                      )
    JEFF LONG,                          )
 7                                      )
          Defendant.                    )
 8                                      )
    _____)
 9

10                            MOTION HEARING
                 BEFORE THE HONORABLE KATHERINE A. CRYTZER
11
                            February 15, 2023
12                              10:05 a.m.

13

    APPEARANCES:
14
          ON BEHALF OF THE PLAINTIFFS:
15
          RAYMOND MARK DIGUISEPPE, ESQ.
16        The DiGuiseppe Law Firm, P.C.
          4320 Southport-Supply Road, Ste. 300
17        Southport, NC  28461

18        JAY LANCE JOHNSON, ESQ.
          P.O. Box 97
19        Hendersen, TN  38340

20

21

22
    REPORTED BY:
23
    Kara L. Nagorny, RMR, CRR
24  P.O. Box 1121
    Knoxville, TN  37901
25  (865) 264-9628
```

1  APPEARANCES (Cont.)

2       ON BEHALF OF THE DEFENDANT:

3       DEAN S. ATYIA, ESQ.
        MIRANDA JONES, ESQ.
4       Tennessee Attorney General's Office
        P.O. Box 20207
5       Nashville, TN  37202

6

7                        *******

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 10:05 a.m.)

2          THE CLERK:  All rise.  The United States District

3   Court for the Eastern District of Tennessee is now open, the

4   Honorable Katherine A. Crytzer, United States District Judge

5   presiding.  Please come to order and be seated.

6          This is civil action 3:21-CV-152, Blake Beeler, et al.

7   versus Jeff Long.

8          THE COURT:  Good morning.

9          MR. JOHNSON:  Good morning, Your Honor.

10          THE COURT:  We are here today for a hearing on the

11  parties' joint motion to approve consent judgment, the

12  corresponding agreed order which is in the docket at 41-1, and

13  the joint supplemental brief that the parties have submitted.

14          After receiving the parties' joint motion and proposed

15  agreed order, the Court ordered the parties to brief a number of

16  issues regarding the proposed agreed order which the Court

17  intends to discuss with the parties at today's hearing.

18          Who will be speaking today for the plaintiffs?  I

19  believe that we've got Mr. Johnson here in the room, and we may

20  have Mr. DiGuiseppe on the phone?

21          MR. JOHNSON:  Yes, Your Honor.  Mr. DiGuiseppe is

22  going to take the lead on that, Your Honor.

23          MR. DIGUISEPPE:  Good morning, Your Honor.  This is

24  Raymond DiGuiseppe on behalf of the plaintiffs, and thank you,

25  again, for accommodating me with the telephonic appearance.

1        THE COURT:  Thank you, Mr. DiGuiseppe.  How do I say
2   your last name to make sure I get it right?

3        MR. DIGUISEPPE:  That was perfect.  Thank you.

4        THE COURT:  I'll mumble through it as we go, and who
5   do we have here on behalf of the State of Tennessee?

6        MR. ATYIA:  Good morning, Your Honor.  Thank you for
7   having us.  My name is Dean Atyia for the State of Tennessee,
8   and I'm joined by my colleague Miranda Jones.

9        THE COURT:  Mr. Atyia, will you or Ms. Jones speak for
10  I guess technically it's Director Long?

11        MR. ATYIA:  I will, Your Honor.

12        THE COURT:  On September 6th of 2022, plaintiffs Blake
13  Beeler, Logan Ogle, and the Firearms Policy Coalition,
14  Incorporated, filed an Amended Complaint which asserts that
15  Tennessee Code Annotated §§ 39-17-1307, 39-17-1351, and
16  39-17-1366 are unconstitutional under the Second and Fourteen
17  Amendment as applied to Plaintiffs Beeler, Ogle, and the
18  Firearms Policy Coalition.

19        Accordingly to these plaintiffs, the law deems these
20  plaintiffs and their representative members categorically
21  ineligible for any permit to carry a loaded handgun in public,
22  categorically ineligible for any permitless carry, and otherwise
23  generally bars them from exercising the full scope of the public
24  carry rights although they are law-abiding adults because they
25  are over 18 years old but younger than 21 years old.  Plaintiffs

1  Beeler and Ogle are both over the age of 18 but under the age of

2  21 and are not otherwise prohibited from possessing or acquiring

3  firearms under federal or state law.

4          Plaintiff Firearms Policy Coalition, Incorporated, is

5  a nonprofit organization with an aim toward defending and

6  promoting the fundamental individual's Second Amendment right to

7  keep and bear arms.  The coalition has members within and

8  outside the State of Tennessee who have been adversely and

9  directly harmed by Tennessee's law.  The coalition brings this

10  action on behalf of plaintiffs Beeler and Ogle and the

11  coalition's similarly-situated young adult members.

12          For relief, the Amended Complaint requests that the

13  Court declare that the challenged scheme, that is, the various

14  portions of the Tennessee Code Annotated violates the rights of

15  plaintiffs Beeler and Ogle and all similarly-situated members of

16  the coalition to keep and bear arms as guaranteed by the Second

17  and Fourteen Amendments; enjoin defendants, their officers,

18  agents, servants, employees, and all persons in active concern

19  or participation with them from enforcing against plaintiffs

20  Beeler and Ogle and all similarly-situated members of the

21  coalition the challenged scheme that impedes or would impede

22  them from exercising their right to keep and bear arms or

23  sanction them from doing so and award plaintiffs costs and

24  attorneys' fees under 42 United States Code § 1988.

25          Defendant did not file any responsive pleading to the

1 Amended Complaint. Instead, on January 23rd of 2023, the
2 parties filed a one-page Joint Motion To Enter Agreed Order
3 requesting that the Court enter the attached Agreed Order which
4 reflects the parties' agreement on the disposition of this
5 litigation. The Agreed Order provided less than two pages of
6 background facts.

7 The parties agree that the challenged scheme violates
8 the Second and Fourteen Amendments and that the parties reached
9 an agreement to resolve the matter consistent with the
10 plaintiffs' requested relief in the action, but the parties now
11 ask the Court to order relief that far surpasses the relief
12 sought by the plaintiffs in the Amended Complaint.

13 The parties ask the Court to declare that the
14 challenged scheme regulating the possession of and carrying of
15 handguns restricts individuals ages 18 years old to 20 years old
16 from carrying handguns or obtaining permits to carry handguns on
17 the basis of age alone violates the Second and Fourteenth
18 Amendment to the Constitution in whole. The parties ask the
19 Court to enjoin the defendant Commissioner Long and his
20 officers, agents, employees, and all others acting under his
21 direction and control from implementing or enforcing the
22 challenged scheme in whole, not just as to the plaintiffs in
23 this action.

24 The parties ask the Court to order that defendant
25 Commissioner Long provide a copy of this Agreed Order to

Tennessee's Attorneys General, Tennessee Sheriff's Association and the Tennessee Association of Chiefs of Police; ask that the Court order defendant Commissioner Long to implement any, and all, procedures necessary to accept and review enhanced handgun carry permit applications under Tennessee Code Annotated § 39-17-1351 and concealed handgun carry permit applications under Tennessee Code Annotated § 39-17-1366 submitted by individuals aged 18 years to 20 years and order defendant Commissioner Long to not deny issuance of such a permit on the basis of age alone.

The parties ask the Court to order Commissioner Long to no later than 90 from the date of this order begin processing enhanced handgun carry permits applications under Tennessee Code Annotated § 39-17-1351 and concealed handgun carry permit applications under Tennessee Code Annotated § 39-17-1366 received from all individuals aged 18 years old to 20 years old who otherwise qualify for such a permit.

The parties also ask the Court to order attorneys' fees and costs to the plaintiffs in the amount of $47,250, release the defendant from various different matters related to this case, retain jurisdiction for the purposes of enforcing this agreed order and its provisions including, but not limited to, its declaration of law and permanent injunction.

In this case plaintiffs raised an as-applied challenge to Tennessee's regime, that is, that the regime is unconstitutional as it applies specifically to plaintiffs

1  Beeler, Ogle, and the Coalition.  How is a permanent injunction

2  of the challenged Tennessee law against and applicable to all

3  18- to 20-year-old adults necessary to remedy the constitutional

4  injury that has been done to plaintiffs in this case?

5  Mr. DiGuiseppe?

6       MR. DIGUISEPPE:  Well, I think that the complaint and

7  the prayer for relief, we were seeking relief as to the

8  similarly-situated members of plaintiff FPC which extends beyond

9  Beeler and Ogle 'cause there are many other individuals in their

10  same capacity, and if you look at it that way too, it is, it is

11  not every single person from Tennessee per say that's similarly

12  situated for the plaintiff FPC.

13       Now I think that the scope of the relief could be

14  extended as great as it is in the agreed order in terms of just

15  not enforcing this law because it's unconstitutional to do so as

16  to anyone who's 18 to 20 otherwise qualifying to have a permit

17  when it is denied the ability to get one.  I think that this is,

18  I think an order like that is consistent with the relief that

19  we've requested.

20       As to how it's necessary to ensure that the

21  individuals in the group specified in our complaint are remedied

22  and their injuries are remedied, well, I suppose absent, for

23  example, identifying each and every member of FPC who's in

24  Tennessee and similarly affected by this law, it would be

25  somewhat difficult to try to parse that out, delineate each and

1  every person who fits within that group of members of that FPC,

2  for example.

3        THE COURT:  Mr. DiGuiseppe, do you know the names of

4  the members of the coalition?  I presume that if you represent

5  that coalition, the coalition has a defined membership.  Is it

6  something different than that?

7        MR. DIGUISEPPE:  No.  There probably is one.  I'm sure

8  this is a list of members that could be identified in that way.

9  You know, I suppose one issue with restricting in an access

10  though and being specific acts to the list of members is, from a

11  practical standpoint is as well.

12        THE COURT:  Mr. DiGuiseppe, perhaps it's worth looking

13  at the law on this precise point.  I think there's a distinct

14  difference between what the State of Tennessee or Commissioner

15  Long could agree to do and what this Court could order in terms

16  of relief with respect to this case.

17        The Supreme Court and the Sixth Circuit have been

18  particularly attuned to this issue as of late.  They have raised

19  thoughtfully this precise issue in the frame of nationwide or

20  universal injunctions that have been issued by district court

21  judges across the country.  Justice Gorsuch has recently said,

22  "Equitable remedies, like remedies in general, are meant to

23  redress the injury sustained by a particular plaintiff in a

24  particular lawsuit.  When a district court orders the government

25  not to enforce a rule against the plaintiffs in the case before

1  it, the court redresses the injury that gives rise to its
2  jurisdiction in the first place."  That is the case in
3  controversy requirement in Article II.  "But when a court goes
4  further than that, ordering the government to take or not take
5  some action with respect to those who are strangers to the suit,
6  it's hard to see how the court could still be acting in the
7  judicial role of resolving cases and controversies."  Justice
8  Gorsuch wrote that in concurrence in *Department of Homeland*
9  *Security versus New York* in 2020.

10      Justice Thomas has similarly expressed skepticism
11  regarding a district court's free-wheeling power to fashion new
12  forms of equitable relief and remarked that, "A general interest
13  in enjoining implementation of an admittedly illegal law
14  provides no basis for an appeal to the preventive powers of a
15  court of equity."  That's in *Trump versus Hawaii*.  And at the
16  Sixth Circuit, Chief Judge Sutton has casted doubt regarding the
17  propriety of granting a remedy that exceeds the specific parties
18  and the alleged particular injury.  That's Judge Sutton
19  concurring in *Arizona versus Biden*, a 2022 case out of the Sixth
20  Circuit.

21      These are not academic questions.  They may very well
22  be practical questions for the state, but they are serious and
23  foundational questions about the constitutional and proper role
24  of the federal courts.

25      MR. DIGUISEPPE:  Uh-huh.  I understand what you're

1  saying.  I have seen those cases or at least some, at least I
2  have read some of Justice Thomas's concerns over the years about
3  the nature and scope of federal court's powers and the extent to
4  which they are bind, their orders can bind other parties beyond
5  those listed in the suit, but I understand it's an ongoing
6  debate of concern.

7        I think from our perspective, I appreciate the Court's
8  concerns and looking at that, that ongoing debate among the
9  justices, the jurists, and the various courts.  You know, we've
10  had a number of cases over the years where parties have been in
11  similar capacity in shape and form as far as the way that this
12  complaint is structured, and it's in a similar procedure and
13  posture and case in terms of what's been litigated, you know,
14  early on which is technically where we are, right, just an
15  amended complaint and no responsive pleading yet.  And we've had
16  settlements that were very similar to this one where the, where
17  the order from the court was as broad as this one in terms of
18  technically going beyond the scope of the parties in the case
19  insofar as not being specific as to other individuals who may be
20  implicated by the order.  That doesn't say obviously anything
21  about what this Court has to do, right, because those are
22  different district courts; but I mean, I could cite to you those
23  as examples if that was relevant to you in terms of seeing what
24  these types of orders look like in other district courts.
25  They're not within your district.  They're different, different

1  districts.

2         But you know, I understand where you're coming from,
3  and you know, I suppose a way to move forward from here is to
4  maybe -- and I don't know if what you're looking for is for the
5  parties to come back with a further analysis and briefing, for
6  example, as to this question in terms of the case law we've
7  cited or if you're already, have formulated an opinion about
8  what your limitations or power are.  And if you have, then we
9  could try to move forward and by having the parties come to some
10 other understanding or at least discussing it at this
11 juncture -- of course we'd have to go back to our individual
12 clients -- discussing at this juncture the scope of the order or
13 an order that you believe you have the power to and you would
14 feel comfortable to enter for purposes of something like this.

15         THE COURT:  Mr. DiGuiseppe, to that point, the parties
16 to this case of course as part of their settlement could agree
17 to broader relief that would reach beyond the parties to this
18 action.  Perhaps the state could agree that it would not enforce
19 this regime that it believes is unconstitutional as to other 18-
20 to 20-year-olds.  That type of agreement amongst the parties
21 would be imminently appropriate, perhaps particularly in a case
22 like where the state agrees that its statutory scheme is
23 unconstitutional as to plaintiffs.  And it appears that that
24 constitutional efficiency would extend to others who are
25 similarly situated here in the State of Tennessee, but that is a

1  completely different question as to whether the court itself
2  could order such relief.  Does that make sense?

3         MR. DIGUISEPPE:  Oh, yes, Your Honor.  I understand,
4  and you know, I have -- I guess what I can say about it is that
5  I'm familiar with the debate, and of course I haven't -- I may
6  not have read up about it as recently as you have, but I've
7  studied the issue in the past and come to my own conclusions
8  about the status of the law.  And my current understanding of it
9  is that it's in the state of flux in terms of the extent to
10 which a district court has such power along the lines of what
11 you just articulated in part because of the inconsistency I
12 guess I would say that I've seen myself in litigating these
13 cases, and I guess I shouldn't say inconsistency.  It's been
14 consistent in my experience with these types of cases where the
15 district courts perhaps in contravention of the side of the
16 debate that Thomas and Gorsuch would subscribe to have signed on
17 to these very types of orders in my other cases.  And I'm not
18 saying that that's right or can't be challenged because you do
19 have certainly jurists of the highest courts questioning that.
20 We even cited your own chief justice in the Sixth Circuit has
21 concerns.

22         You know, whether that's binding authority, binding
23 precedent like the concerns I believe, and you can correct me if
24 I'm wrong, but I believe the analyses you're referring to are in
25 concurring opinions and dissenting opinions, and they're not

1  necessarily part of the majority precedential opinion that would
2  bind other courts to that analysis.  I think what's happening is
3  that the issue or these issues is percolating up through the
4  circuits and will eventually be settled finally by the Supreme
5  Court, but we're not there yet.

6        THE COURT:  Mr. DiGuiseppe, you're correct about the
7  state of law.  I will tell you that I've spent a good amount of
8  time with this question myself, and I share the constitutional
9  concerns of Justice Gorsuch, Justice Thomas, and Chief Judge
10  Sutton with respect to this precise question.  Whether I ever
11  have any authority to order relief beyond that which is
12  necessary to remedy the alleged injury of a plaintiff in a
13  particular case is a relatively decided question as far as I'm
14  concerned.

15        MR. DIGUISEPPE:  Uh-huh.  Okay.  Okay.

16        THE COURT:  Mr. Atyia, I'd like to give you a chance
17  to speak to that precise question on behalf of the commissioner.
18  I imagine that this is an issue that perhaps not Commissioner
19  Long but certainly the State of Tennessee deals with with some
20  frequency.

21        MR. ATYIA:  Thank you.  May I stand at the podium?
22        THE COURT:  Please.
23        MR. ATYIA:  I think Your Honor raises the same issue
24  that I think the parties have struggled with and asks the really
25  pertinent question.  The way we've thought about it is slightly

1 differently than the way the Court has characterized it but
2 reaches the same conclusion. We've seen traditionally as I'm
3 sure Your Honor knows you have as-applied in facial changes to
4 the constitutionality of the statute. We've seen some case law
5 refer to this type of situation as a qualified facial challenge
6 which is basically saying -- in a normal facial challenge, you
7 have someone saying in all aspects, this statute is
8 unconstitutional. It's across the board it cannot be
9 constitutionally applied to anyone.

10 What -- I believe the plaintiffs, while they've pled
11 on their own behalf, the plaintiffs' theory would be, and I
12 don't want to speak out of turn, but I think the plaintiff's
13 theory would be, well, we're qualifying that here 'cause if
14 you're 18 to 20, there's no 18- to 20-year-old you can apply
15 this statute to constitutionally or these combination of
16 statutes to constitutionally but otherwise they're okay.

17 So we've heard that referred to in some cases as a
18 qualified facial challenge, and whether the court would share
19 that view and be able to order relief to that sort of category
20 of people, the qualified category, I think depends on what this
21 court started with which is what does the complaint say and what
22 relief is the complaint asking for, and we would have to defer
23 to Your Honor's interpretation of the complaint before we could
24 say whether extension to that whole qualified category falls
25 within Your Honor's jurisdiction. We think it could, but --

1    THE COURT:  Mr. Atyia, under that theory, do other

2  individuals age 18 to 20 have the right to stand here in court

3  today and object to this settlement?  If they are viewed as

4  potential plaintiffs to this action, should the state be

5  consulting them?  Do they have the right to object?

6    MR. ATYIA:  That's a really interesting question, and

7  I spent some time last night reading into this.  That goes to

8  the standing of enforceability of consent decrees as opposed to

9  the relief to whom the decree extends to.  The standing of

10  consent decrees is very interesting because we start with -- and

11  I don't want to -- I'm, the Court is very familiar with these

12  issues, so I'm sorry if I'm belaboring anything, but we stand

13  with the understanding that a consent decree is a creature of

14  federal common law which some of us were taught in law school

15  doesn't really exist but it kind of also does.

16    THE COURT:  It does exist.

17    MR. ATYIA:  So there's, there's consent decrees that's

18  a creature of federal common law, and this question has often

19  come up in the context of consent decrees, well, is there third

20  party, can there be a third-party beneficiary to enforce a

21  consent decree, and the court says there cannot be.  There

22  cannot be a third-party beneficiary to enforce a consent decree,

23  but let me give you one caveat the courts will say, and they say

24  there is an assignability aspect of consent decrees depending on

25  the language of the decree, but that assignability really isn't

1　in play here because it goes from what I understand, and this is
2　in -- we've cited this case not for this proposition, but I
3　think this contains a very helpful understanding of this
4　concept.　It's *Evoqua Water Technologies.*

5　　　　　What the Sixth Circuit there said is there's a
6　standard law that there's no third-party beneficiary, but what
7　there is is if a party has privity to a party that entered the
8　consent decree and there's not a specifically, specific
9　non-assignability carved out, there could be assignability to a
10　party in interest, but that depends based on Erie principles on
11　the interpretation on the applicable state's contract law.

12　　　　　So I'm sorry to sort of go down the rabbit hole --

13　　　　　THE COURT:　These are all relevant issues.　Mr. Atyia,
14　that's a question that I had later with respect to enforcement
15　of this consent decree on the back end.

16　　　　　MR. ATYIA:　Sure.

17　　　　　THE COURT:　But the Court has read *Evoqua* -- I want to
18　make sure I say it correctly -- and it appears that that really
19　is limited to the parties, those who are in privity, their
20　agents, folks who could be bound by the action taken by the
21　parties to this case.　It's unclear to me whether other 18- to
22　20-year-olds here in the State of Tennessee could be bound by
23　any agreement that the plaintiffs in this case make and
24　Commissioner Long make, and so that's where there can be this
25　sort of disconnect, where there might be some daylight.　If that

1  consent decree orders or declares the rights with respect to
2  individuals who are not here before the Court, should they then
3  on the back end be permitted to challenge the consent decree.

4          MR. ATYIA:  May I answer that question, Your Honor?
5          THE COURT:  Yes.

6          MR. ATYIA:  I think the answer is absolutely not.
7  The, the rights that are being conferred by the consent decree
8  run to and against the parties to this consent decree, so the
9  state -- if there were a question in the future, I think
10 Mr. DiGuiseppe's clients could come and say this is being
11 violated and here's our interest 'cause we have this consent
12 decree, but I don't think another 18- to 20-year-old not before
13 the Court in this consent decree could come and assert those
14 rights.

15         THE COURT:  Would that be the case if the Court
16 declared the rights with respect to those individuals?  This is
17 sort of where the relief question reaches the consent decree
18 question.  Imagine that the Court grants relief that is broader
19 than the parties that are here before the Court.  The Court
20 declares the rights of a 19-year-old in Knoxville, Tennessee.
21 That 19-year-old is not a party to this action.  Let's imagine
22 that he or she is not a member of the coalition and not
23 Mr. Beeler, not Mr. Ogle.  If the Court declares that
24 19-year-old's rights, what does the 19-year-old do if it wants
25 to challenge the Court's declaration of those rights?

1          MR. ATYIA:  I think one thing the 19-year-old could do
2     is say I'm going to bring a separate action and hold up this
3     consent decree as evidence of the unconstitutionality of this
4     statute, sort of as an estoppel instrument or an admission
5     instrument to say the state has acknowledged this is
6     unconstitutional and has acknowledged it's unconstitutional by
7     the terms of this consent decree to people like me, this
8     19-year-old.

9          THE COURT:  If the Court has already declared that
10    19-year-old's rights, why does he or she need an extra action?

11         MR. ATYIA:  He may -- he or she may not need an extra
12    action.  I was just answering if that person felt that they had
13    to assert those rights, I think that's how they would come in to
14    court and assert those rights, but again, I think that would be
15    a fairly legal question of estoppel based on an issue already
16    litigated before the Court.  The issue you have there is the
17    plaintiff asserting that right wouldn't have been in privity
18    with this action but I think could still use that to say this
19    is, this is the state of the law on this statute as acknowledged
20    by this consent decree, but --

21         THE COURT:  Mr. Atyia, that would be the same case if
22    the Court were to approach this in the more limited way that
23    it's already set out to Mr. DiGuiseppe.  The parties can agree
24    to their own understanding of the constitutionality of this
25    regime.  The State of Tennessee through Commissioner Long can

1  agree that the current regime is unconstitutional.  The Court
2  could then enforce that agreement with respect to the parties in
3  this case including Commissioner Long and in some ways the State
4  of Tennessee to the extent that he's a state employee.  Wouldn't
5  the 19-year-old in Knoxville still be able to use that consent
6  decree and the state and Commissioner Long's agreement to make
7  sure that his or her rights are preserved?

8         MR. ATYIA:  Can -- I'm sorry.  I didn't -- are you
9  saying if the parties entered a settlement agreement outside the
10 litigation?

11        THE COURT:  So if there were a settlement agreement in
12 this case where the parties agreed that what the State of
13 Tennessee's currently doing is unconstitutional, the Court then
14 enters an order approving their consent decree, settlement
15 agreement, whatever you want to call it.  The form can be -- the
16 form could be various different forms, but wouldn't that
17 19-year-old's rights still be preserved without requiring an
18 order from this Court stating that the State of Tennessee's
19 current interpretation is unconstitutional?  Once the state has
20 agreed that what it's doing is unconstitutional, that issue is
21 decided vis-a-vis the state, and so the plaintiff could take
22 that and show up at a gun show and say I'm a 19-year-old.  I'm
23 aware of this.  I'd like to purchase a firearm.  Doesn't that
24 take care of this?

25        MR. ATYIA:  So I think that's a little more

1  complicated, because if the parties enter the kind of instrument
2  you're talking about, it would -- I don't think there would be a
3  court order necessary.  The parties would agree to that
4  settlement, and this it would -- in most cases, I think you
5  could work it so there's a court order, but in most cases that
6  settlement would result in an agreement for joint dismissal of
7  this action, and it would depend, the enforceability of the
8  settlement against the state would depend on the terms of the
9  settlement agreement.

10          So if the settlement agreement provided, you know, the
11  parties understand that in ten third-party beneficiaries of this
12  agreement are all 18 to 20-year-olds, you know, certain
13  language, Your Honor, that would encapsulate the kind of
14  individual you're talking about, then I think as a question of
15  contract law and third-party beneficiary status, that person
16  could with the right language bring that into a court and move
17  to enforce it against the state; but I think it would all depend
18  on the language of the settlement agreement, because that would
19  be outside of the court's order and interpreted on its own
20  terms.

21          THE COURT:  And Mr. Atyia, there's a separate way for
22  the Court to enter an order agreeing to enforce the parties'
23  settlement agreement but also to retain jurisdiction that would
24  take a slightly different form than what the parties have asked
25  the Court to enter here, but it would avoid the issue that's

1  present with nationwide injunctions, the scope of the relief

2  that the Court has authority to grant.

3  MR. ATYIA:  Yeah.  So I think, Your Honor, I think I

4  understand.  If we, if there were a settlement agreement that we

5  brought to the Court for approval for the purposes of retaining

6  jurisdiction, I think that's right, Your Honor.  I think you're

7  exactly right, if we set up the procedures that way.  There

8  could still be the instrument between the parties and a court

9  stamp of I will continue to be a jurist should someone seek to

10 enforce this settlement agreement.

11 THE COURT:  And that would remove some of the issues

12 that we're having with this 19-year-old who's not a party before

13 the Court.  The Court will retain jurisdiction to enforce the

14 settlement vis-a-vis the parties that are here before the Court

15 on this complaint.  There would also be a written instrument

16 that's on file in federal court.  The 19-year-old would be able

17 to show up at the gun show and to say I'm aware of this.  I'm

18 not a party to this action, but I'm aware that the State of

19 Tennessee and Commissioner Long have agreed that I am now

20 permitted to purchase a firearm, and he or she could

21 constitutionally purchase that firearm provided that he or she

22 isn't otherwise prohibited.

23 MR. DIGUISEPPE:  Your Honor?  This is Raymond

24 DiGuiseppe.  Unless Mr. Atyia was going to say something, I just

25 had a question.

1              THE COURT:  Please.

2              MR. DIGUISEPPE:  I just wanted to make sure I

3    understand what the distinction is.  It sounds to me like the

4    distinction is the terms and conditions under the agreed order,

5    they include a term which declares the unconstitutionality of

6    the law, the challenged scheme with respect to this entire group

7    of individuals, and that seems to be the main concern of the

8    Court, and I understand and appreciate that.

9              What you're saying is a distinction which would be the

10   proper and within the scope of your authority now applied the

11   nature of this debate that's of concern would be to have a

12   settlement agreement that essentially sets forth the same terms

13   and conditions but it's embraced in the sense of an agreement

14   between the parties as to the unconstitutionality of the law as

15   to the entire class of the same individuals currently stated in

16   the agreed order.  And then the Court would approve the

17   settlement agreement, the terms and conditions of it, and retain

18   jurisdiction so that in the future if there were an issue or

19   need to do so, the Court could enforce the terms of the parties'

20   agreement but it wouldn't be enforcing a declaratory judgment.

21   Is that --

22             THE COURT:  That's correct, Mr. DiGuiseppe.  The

23   distinction there would be the Court is declaring the rights

24   with respect to the parties who are here before the Court in

25   this case pursuant I think to the state's agreement that it

1   doesn't have grounds to seek to enforce the statutory regime

2   post-*Bruen*.  The Court would declare the rights with respect to

3   the parties to this action but not speak to any legal

4   declaration with respect to other parties that are not here

5   before the Court.  Does that make sense?  I see Mr. Atyia

6   nodding along.  You can't see him, but assure you it's

7   happening.

8            MR. DIGUISEPPE:  Right, and but in the settlement

9   agreement between the parties that the Court would separately

10  approve, that would have the greater scope of applicability, and

11  the Court's power in retaining jurisdiction as to that agreement

12  would extend to the terms of that agreement, but it wouldn't be

13  from the perspective of a declaratory judgment that is beyond

14  the scope of the parties in the case.

15           THE COURT:  Mr. DiGuiseppe, I think you've got that

16  right, is that the state vis-a-vis Commissioner Long could agree

17  to a broader resolution.  The state could agree that for all 18-

18  to 20-year-olds the current regime is unconstitutional.  The

19  state could agree that it's going to take specific actions with

20  respect to everyone age 18 to 20.  The state could agree to

21  issue copies of the parties' agreement, the various different

22  state actors who may be involved in this undertaking, but what

23  appears to be inappropriate is for the Court to declare relief

24  beyond the individuals that are currently here before the Court.

25           MR. DIGUISEPPE:  And so what -- are we talking then,

1  basically it sounds like two different documents so to speak,
2  one being the order of the Court which would be more narrowly
3  circumscribed as to the parties in this individual case and then
4  another document which is the settlement agreement that the
5  Court approves and then retains jurisdiction to enforce.

6      THE COURT:  Mr. DiGuiseppe, I haven't thought through
7  whether this is one document or two.  That --

8      MR. DIGUISEPPE:  Okay.

9      THE COURT:  -- seems to be a point that Mr. Atyia may
10  have thoughts on and may more appropriately be an issue for the
11  parties to discuss coming out of this hearing.  Mr. Atyia?

12      MR. ATYIA:  I think that's right, Your Honor.  I
13  think -- I've seen, I think there would be very little to
14  present to the Court besides an agreement itself and an
15  understanding of retention of jurisdiction.  I don't think --
16  doing it the way that we're discussing here, I think there's
17  documents similar to what we have in front of us, and I can
18  discuss all this with Mr. DiGuiseppe, and then a very simple
19  document that doesn't require the Court to make proclamations of
20  law other than a continuing enforcement capability.

21      And if I may mention one other thing, Your Honor.  I
22  think this is a very helpful discussion.  I guess my
23  understanding of the consent decree was it basically is a
24  settlement agreement that the Court orders, but now that we've
25  added this jurisdictional element that sort of abuts against

1  question, I see -- we can't just view it that simply.

2      THE COURT:  Yes.  And Mr. Atyia, I think, there's a

3  distinction between what the parties can agree to here and what

4  it would then necessarily be appropriate for the Court to order,

5  and that's I think where the rubber meets the road here.  It may

6  very well be the case that if this matter were litigated, it

7  would be appropriate for the Court to enter an order declaring

8  the state's statutory regime unconstitutional under *Bruen*.  I

9  don't have that litigation here before me.  I don't have the

10  record to make that determination.  What I instead have is the

11  parties' agreement that the regulatory regime is

12  unconstitutional, but that can't necessarily equate to the Court

13  declaring as a matter of law for all 18- to 20-year-olds that

14  this regime is unconstitutional, and that's the divide the way I

15  view it both as a matter of law and fact in a case like this.

16      I think then the parties have circled a proposed way

17  forward.

18      MR. ATYIA:  May I --

19      THE COURT:  Mr. Atyia, go ahead.

20      MR. ATYIA:  I do have to say I think theoretically

21  this is certainly a way forward.  I'm not able to represent on

22  behalf of the state or my client that this is an acceptable way

23  forward, but I don't want that to detract from the fact that it

24  works procedurally and it certainly may be acceptable.

25      THE COURT:  Mr. Atyia, to extent that it is helpful to

take this back to Commissioner Long or to the state, at bottom the parties to this action can agree to a resolution of the case in controversy between them in. In that agreed resolution, the parties can agree to certain understandings of the law. The parties can also agree that plaintiffs are prevailing parties and entitled to certain reasonable attorney's fees and costs.

In that agreed resolution, the State of Tennessee vis-a-vis Commissioner Long may also under, agree to undertake certain actions beyond those that are required to remedy the wrong to the precise plaintiffs in this case. The Court can enforce that agreed resolution as to the parties in this case, but it is not appropriate for this Court to make a declaration of law as to the constitutionality of Tennessee's statutory regime solely based on the parties' agreement that this statutory regime is unconstitutional, and it is also not appropriate for the Court to specifically order relief to individuals who are not parties to this action when that relief is not necessary to remedy the injury to the plaintiffs who are parties in this precise action.

Given that the parties now I think understand better some of the heartburn that the Court has with its proper role and the approach that's presented in the agreed order, the Court stays this action for 30 days to permit the parties to consider the issues that were raised at today's hearing and decide how they would like to proceed including whether they would like to

submit an amended proposal for the Court's consideration, an amended joint motion for entry of agreed order, an amended agreed order, amended settlement agreement, whatever form it's appropriate for that type of agreement to take before the Court. This stay will benefit all the parties and provide for the most efficient use of judicial resources under *Landis* which permits the Court could further stay this action.

The Court will hold the parties' current Joint Motion For Entry Of Agreed Order in abeyance while that process is ongoing. At the conclusion of those 30 days, if no further action is taken, the Court will rule on the current Joint Motion For Entry Of Agreed Order. If the parties need more than 30 days to accomplish what may be necessary, the Court would look kindly on a motion. I understand that the state will have various levels of approval that may be necessary, and the coalition may have the same type of issue with respect to its various members, both in Tennessee and outside of Tennessee.

Given the various issues of constitutional importance that we've discussed today, are there any other matters that either party would like to address at this time Mr. DiGuiseppe?

MR. DIGUISEPPE: Well, first of all, thank you, Your Honor, for your thoughtful analysis of the situation. It's well appreciated.

I mean, if the Court, and it sounds to me like the Court has already made certain fundamental conclusions about the

1   limits of its power and authority, and so I don't know that it's
2   really worthwhile for the parties to dig into briefing on the
3   actual or what should be the boundaries of the Court's authority
4   as to both declaratory judgments and injunctive relief. Perhaps
5   we just take from this, from this point forward what it is is
6   the Court has concluded and is persuaded to conclude based upon
7   the case law we've discussed and move on from there and come up
8   with a, you know, an understanding vis-a-vis some sort of
9   settlement agreement, consent decree, and limited to that; but I
10  just wanted to say if the Court was still interested in sort of
11  exploring this debate further and having briefing on the
12  substantive questions as to what are the nature, what's the
13  nature and scope of the Court's power as to these issues, we
14  could do that. So it sounds like we're not going to do that,
15  and I just wanted to clarify that's what the Court would like is
16  just for us to focus on what we see the Court is seeing its
17  limits are in terms of authority and work within those
18  boundaries and not try to push those boundaries further.

19          THE COURT: Mr. DiGuiseppe, I appreciate the kindness.
20  The Court has spent a good amount of time with these issues.
21  While the Court has not issued an order on the current motion, I
22  think the plaintiffs and the defendant in this case can take the
23  discussion that was had today before the Court as near gospel
24  truth with respect to this Court's authority under Article III
25  of the case-in-controversy requirement.

 1          MR. DIGUISEPPE:  Okay.  All right.  Then that's all I

 2   would have to add is just to clarify that that's where we are.

 3   We'll use that as the launching point for moving forward.  Then

 4   we're fine with that.

 5          THE COURT:  Thank you, Mr. DiGuiseppe.  Mr. Atyia,

 6   anything else on behalf of Commissioner Long or the state?

 7          MR. ATYIA:  We appreciate the Court's guidance today.

 8   It's very helpful, and thank you again.

 9          THE COURT:  Thank you.  Court is adjourned.

10          MR. DIGUISEPPE:  Thank you.  Have a good day.

11          THE COURTROOM DEPUTY:  All rise.  This honorable court

12   stands adjourned.

13              (Proceedings conclude at 10:51 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3   STATE OF TENNESSEE   )

4   COUNTY OF KNOX   )

5          I, Kara L. Nagorny, RPR, RMR, CRR, do hereby certify

6   that I reported in stenographic machine shorthand the above

7   proceedings; that the foregoing pages were transcribed under my

8   personal supervision and with computer-aided transcription

9   software and constitute a true and accurate record of the

10  proceedings.

11         I further certify that I am not an attorney or counsel

12  of any of the parties nor an employee or relative of any

13  attorney or counsel connected with the action nor financially

14  interested in the action.

15         Transcript completed and dated this 24th day of

16  February, 2023.

17

18

19

20

21  _____

22  Kara L. Nagorny, RPR, RMR, CRR
    United States District Court Reporter
23  P.O. Box 1121
    Knoxville, TN  37901
24  (865) 264-9628

25